Thompson v. Bone.

---

No. 27,283.

F. M. THOMPSON, *Plaintiff*, v. ROY L. BONE, *Defendant.*

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Depositors' Guaranty Fund—When Payments to be Made.* When a bank operating under the bank guaranty law fails and is taken charge of by the bank commissioner, and the officer in charge of the bank has realized upon the assets of such bank and exhausted the double liability of its stockholders, and has paid all funds so collected in dividends to the creditors and certified all balances due on guaranteed deposits to the bank commissioner, who has approved such certification, the bank commissioner should draw checks upon the state treasurer, to be countersigned by the auditor of state, payable out of the bank depositors' guaranty fund in favor of each depositor, for the balance due upon the certificate on such fund issued to him under the bank guaranty law.

2. SAME—*Depositors' Guaranty Fund—Interest on Certificates—Statute Taking Away Vested Interest Is Void.* The last provison of section 1, chapter 88, of the Laws of 1925, which reads, "That all certificates heretofore issued, upon proof of claim to depositors, shall cease to bear interest from and after the taking effect of this act," is void, for the reason that it deprives the holders of such certificates of a vested interest in property.

3. SAME—*Depositors' Guaranty Fund—Collection of Assets and Double Liabilities—When Statute Satisfied.* The provision of the statute (R. S. 9-204) that the officer in charge of the bank shall realize upon the assets of such bank and exhaust the double liability of its stockholders, is satisfied when all such assets and double liabilities have been realized upon that it is reasonably possible to collect.

4. SAME—*Receivership of Insolvent Bank—Fixing Time for Presentation of Claims.* A court of equity supervising the administration of a receivership of an insolvent bank may make an order fixing a reasonable time, and providing for notice thereof, within which creditors must present their claims to the receiver or be barred from participating in the assets of the bank even though the time fixed be less than the maximum period of the statute of limitations.

5. SAME—*Depositors' Guaranty Fund—Payment and Distribution of Fund.* If the cash available in the bank depositor's guaranty fund is insufficient to pay in full certificates thereon for guaranteed deposits at the time they

Banks and Banking, 7 C. J. pp. 484 n. 75, 744 n. 90.

should be paid, the certificate holders should be paid *pro rata* as much as the fund will permit, and the balance should be paid as the fund is restored by assessments on member banks, or otherwise.

Original proceedings in mandamus. Opinion filed December 11, 1926. Judgment for the plaintiff.

*Robert Stone, George T. McDermott, Robert L. Webb, Beryl R. Johnson, Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, *R. P. Evans, George Clammer,* both of Manhattan, and *A. E. Dempsey,* of Leavenworth, for the plaintiff.

*Charles B. Griffith,* attorney-general, *John G. Egan* and *William A. Smith,* assistant attorneys-general, for the defendant.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to require defendant to issue his check upon the state treasurer for the balance due upon a certificate on the bank depositors' guaranty fund issued by defendant to a depositor in the State Bank of Hope, which operated under the bank guaranty law, and which failed and was taken charge of by defendant April 20, 1922, and for which a receiver was appointed who has completed his administration of the affairs of the bank and certified the balance due on the certificate, which certification has been approved by defendant, and for a declaratory judgment for the determination of certain questions arising in the administration of the bank guaranty law. The defendant has filed a return. Plaintiff has moved that the peremptory writ issue, notwithstanding the return, thus presenting for decision the legal questions raised by the pleadings.

The first question presented for our determination is: Should defendant issue his checks on the state treasurer, to be paid from the bank depositors' guaranty fund as the banks are finally liquidated, or should some other method be followed in the disbursement of that fund?

The pertinent statute reads:

". . . After the officer in charge of the bank shall have realized upon the assets of such bank, and exhausted the double liability of its stockholders, and shall have paid all funds so collected in dividends to the creditors, he shall certify all balances due on guaranteed deposits (if any exist) to the bank commissioner, who shall then, upon his approval of such certification, draw checks upon the state treasurer, to be countersigned by the auditor of state, payable out of the bank depositors' guaranty fund in favor of each depositor for the balance due on such proof of claim as hereinafter provided. . . ." (R. S. 9-204.)

The statute seems plain. We see no reason why it should not be followed. It is argued on behalf of defendant that the bank guaranty law contemplates unity of treatment of depositors; that the fund is hopelessly insolvent, and that some method of equitable distribution of the fund should be devised and carried out, and *State, ex rel., v. Davis,* 114 Kan. 270, 217 Pac. 905, sixth syllabus, is cited. That is a legislative problem rather than a judicial one. The statute provides that when a failed bank is finally liquidated the balance due upon certificates issued to depositors of such bank should be paid, and in that respect all depositors are treated equally; in fact all depositors who are in the same situation are treated equally. The bank depositors' guaranty fund is insolvent in the sense that certificates thereon have been issued to depositors of failed banks greatly in excess of the fund now on hand to pay them, but this is a situation made possible by the bank guaranty law, although that situation perhaps was not anticipated when the law was enacted. Even if this court should ignore the statute above quoted, a thing it would not be justified in doing, and attempt to disburse the bank depositors' guaranty fund among all holders of certificates thereon, we could not do it without ordering a termination of the operation of the bank guaranty law, an order we would have no authority to make. The statute provides for the voluntary membership of banks therein. The return here shows there are about 300 member banks. We have no authority to deprive those banks of such membership; whether they retain such membership is their business, not the business of this court. The bank depositors' guaranty fund is constantly being increased by the payment of assessments by member banks and the transfer thereto of bonds pledged by former member banks which have withdrawn, or are withdrawing. Perhaps it will never be increased enough to pay all certificates which have been issued against it, but the amount it may be increased is uncertain, and in the present state of the law is impossible of determination, and no one can know unless and until the plan of guaranty of deposits provided by the bank guaranty law is brought to an end—if such time ever comes. Also, there would be no way of determining the number or amount of certificates thereon which may be issued. Those now issued may be determined, but those to be issued cannot now be determined. The return herein shows five member banks failed whose depositors are entitled to

certificates which have not as yet been issued and the number and amount of which are unknown. Since this case was submitted in this court member banks have failed whose depositors, under the statute, will be entitled to certificates, the number and amounts of which will not be known for several months. The law still exists and other member banks may fail whose depositors will be entitled to certificates. Hence the suggestion that the bank depositors' guaranty fund be disbursed *pro rata* among all holders of certificates thereon is impossible so long as the scheme of the bank guaranty law is functioning as a going concern. In this it differs from the soldiers' compensation statute considered by the court in *State, ex rel., v. Davis,* supra. There the questions which fixed liability were in the past. The question whether one served in the army, navy or marine corps of the United States during the World War, the time he so served, and whether the claimant was a resident of this state at the time he entered such service, related to matters in the past, did not depend upon future contingencies, and were possible of definite ascertainment from existing data. Moreover, the statute there under consideration did not provide the order of priority of payment. This statute does provide that the payment of the balance due upon certificates issued to depositors of any failed bank shall be made when the affairs of that bank have been fully administered, and thus, as between depositors of different failed banks, does provide an order of priority of payment. The legislature has provided a method of disbursing the bank depositors' guaranty fund. When some other method is to be used the legislature should provide it. Until some different method is provided the statute in force should be followed.

The next question presented is whether the certificate in question bears interest to the date of payment, or whether interest thereon ceased March 17, 1925. The body of the certificate reads as follows:

TOPEKA, KAN., August 22, 1923.

"This certifies that A. F. Sandow had on deposit in the State Bank of Hope, Hope, Kan., when it was placed under the control of the bank commissioner of Kansas and by him closed on April 20, 1922, the sum of three hundred twelve and 41/100 dollars, subject to the provisions of the bank depositors' guaranty law of the state of Kansas.

"This certificate bears interest at the rate of 6 per cent per annum from April 20, 1922, until dividends due the holder hereof have been declared and published as provided by section 4 of the bank depositors' guaranty law of the state of Kansas."

It was signed by the bank commissioner and registered in his office. The dividends paid from the assets of the bank are indorsed thereon and it is assigned to plaintiff. The statute (R. S. 9-204) in force at the time this certificate was issued authorized the provision therein as to interest. The statute was amended in 1925 (Laws 1925, ch. 88, effective March 17, 1925) by omitting the provision for such certificate to bear interest, and by providing "That all certificates heretofore issued . . . shall cease to bear interest from and after the taking effect of this act." The question is: Should the balance due on this certificate bear interest since March 17, 1925, to the time of payment? Plaintiff contends that it should; that the amended statute is void as to him for the reason that it impairs the right, vested in him by reason of the statutes in force at the time the bank failed, and of the circumstances which authorized the certificate to be issued to him, which rights were evidenced by the certificate, to have paid to him from the bank depositors' guaranty fund (if sufficient for that purpose) the amount of his deposit (less dividends from the assets of the bank) with interest, as provided by statute and recited in the certificate, and that the right to be paid interest on his deposit was just as firmly vested in the depositor as the right to be paid his deposit. This contention must be sustained. It is true, as argued by defendant, that the rights, duties and responsibilities of parties under the bank guaranty law are statutory rather than contractual; that the enactment of the bank guaranty law and modifications of it from time to time is an exercise of the police power of a state, which power the state is authorized to use in this respect for the reason that the business of banking is one clothed with a public interest. (*State, ex rel., v. Bone,* 120 Kan. 620, 634, 244 Pac. 852, and authorities there cited.) It is also true that the certificate itself is not a negotiable instrument, as that term is used in the negotiable instruments act. (*State, ex rel., v. Bone,* supra.) This last is true for the reason, in part, that the certificate itself is not a definite promise to pay (R. S. 52-201, 52-203) and contains no words of negotiation (R. S. 52-201). But regarding the rights and obligations of parties under the bank guaranty law as being statutory, there occur events by which rights and obligations with respect thereto become fixed, and are no longer subject to change. To illustrate, the statute required member banks to make a deposit of bonds (or money) as evidence of good faith on their part, and provided that a bank which liquidated, or which withdrew as a

member bank, should have its bonds pledged returned to it. But in *State, ex rel., v. Bone,* supra, it was held that such bonds pledged could not be returned if at the time the member bank liquidated or withdrew other member banks had failed, to the depositors of which certificates had been issued which had not been paid, unless the bank liquidating or withdrawing paid all assessments necessary to be levied to pay such certificates. In other words, events which had taken place had fixed the rights or obligations of the parties. As long as events had not otherwise fixed the rights of the parties, banks could withdraw as member banks, or liquidate, as suited their directors. Their acts were wholly voluntary, but when events caused their rights or obligations to become fixed they were bound, notwithstanding their directors might choose otherwise. Now, take the situation of a depositor in a bank operating under the bank guaranty law. So long as the bank was open and functioning normally he could withdraw his deposit, for any purpose he chose; his deposit was subject to his voluntary action. When the bank was closed his right to control his deposit ceased. He then acquired the right to have a certificate issued to him on the bank depositors' guaranty fund for the full amount of his deposit, and that the same should bear interest from the date the bank closed until it was paid. Not for some part of his deposit only, not for the deposit without interest, but for the full amount of his deposit, with interest. This right became fixed and vested in him. The fact that the certificate was not issued until more than a year after the bank failed did not affect it. This right became vested in him the day the bank was closed. It is fundamental, of course, that the legislature cannot by statute deprive a person of vested rights in property.

The next question is whether the officer in charge of the bank has "realized upon the assets of such bank, and exhausted the double liability of its stockholders," within the meaning of the statute. (R. S. 9-204.) In his certificate William Docking, general receiver, who was the officer in charge of the State Bank of Hope, certified that he had realized upon the assets of such bank and had exhausted the double liability of stockholders, and that he had paid all funds so collected in dividends to the creditors, and he certified the balance due on the guaranteed deposits. This certificate was approved by the defendant as bank commissioner. With this certificate was a letter of the general receiver to the bank commissioner in which it was stated:

Thompson v. Bone.

"I have done everything that in my judgment can be done toward exhausting the double liability. All other assets have been realized upon. Whatever is left is in my opinion and the opinion of my counsel worthless and does not justify any further effort to collect. As a practical matter the double liability is exhausted."

It was stated in the return that while the officer in charge of the bank realized upon all assets, as far as it was practicable for him to do so, it is also true that he has not recovered in full on the double liability of stockholders. Some stockholders paid their double liability in full. Judgments have been rendered against others which the receiver has been unable to collect, in whole or in part, by execution, and he believes such judgments to be uncollectible. Other stockholders have moved from the jurisdiction of the state, and their stockholdings were so small that in the judgment of the receiver and of the defendant the cost of undertaking to collect the double liability would be more than the amount of it when collected. The real question presented for our decision is: Can there be a final closing up of the affairs of the bank before the full double liability has been collected; or, if there are some notes or other assets of the bank which have not been collected? The receivership should not be held open and the general closing of the bank's affairs and payment to depositors from the bank depositors' guaranty fund delayed because of the inability to collect noncollectible items. To do so would be to postpone indefinitely, and perhaps forever, the payment of the balance due depositors on their certificates in the bank depositors' guaranty fund. When all of the assets of the bank and double liability of the stockholders have been collected which, in the judgment of the receiver and his counsel and of the bank commissioner, can be collected, the bank's affairs are fully administered by the receiver for the purpose of making the payment of the balance due on guaranteed deposits. Under the last provision of R. S. 9-204 any sums which might be collected later upon supposed uncollectible assets, or double liability of stockholders, revert to the bank commissioner for the benefit of the bank depositors' guaranty fund, until such fund is fully reimbursed for payments made therefrom on account of such failed bank.

Another question is presented with reference to the authority to fix a time within which claims should be filed. While the receiver of a failed bank is appointed by the bank commissioner, the administration of the receivership, for certain purposes at least, is in

the district court of the jurisdiction in which the bank was situated. (R. S. 9-130.) In this case the bank failed and was taken charge of by the bank commissioner April 20, 1922. On May 19, 1925, on application of the receiver, with the approval and under the direction of the defendant bank commissioner to the district court of Dickinson county, the court made an order that the receiver be authorized and directed to give notice to all creditors of the bank to file any claims they might have against it with the receiver within thirty days from the first publication of the notice. The order specified that any creditor who should fail to file his claim within the time limit should be barred from participating in the assets of the bank, and the receiver should be discharged from liability on account of any such claim not thus presented. The notice was published as directed by the order of the court. July 1, 1925, was the final date fixed for filing claims. No claims have been filed with the receiver since that date. Hence the time fixed for filing claims is less than the period of the statute of limitations upon some classes of claims. (R. S. 60-305, 60-306.) The receivership is an insolvency proceedings, whether the receiver be appointed by the bank commissioner or by the court. In such proceedings it is within the jurisdiction of the court administering the matter to fix a reasonable time for the presentation of claims, even though that time be shorter than the maximum period of the statute of limitations. (34 Cyc. 342.) The question in each case is whether the time given is reasonable in view of all the facts and circumstances of the case. The order here made was more than three years after the bank commissioner took charge of the bank; hence, the three-year statute of limitations had run. The bank books should show the deposits; hence, the receiver and the court should know whether they were general depositors or holders of time certificates of deposit who had not presented claims. The fact that it is now more than four years since the bank was taken charge of by the bank commissioner, and no claims have been filed since the date fixed in the order of the court, indicates that the order made was reasonable. There seems to be no reason to delay final payment to the holders of certificates issued to them because of their guaranteed deposits because of a possibility that other claims may be presented.

The balance due holders of certificates on the bank depositors' guaranty fund issued to depositors of the State Bank of Hope is $186,461.95, with interest at six per cent per annum since April 20,

Thompson v. Bone.

1922. The available cash in the bank depositors' guaranty fund on July 10, 1926, was $150,730.19. Since then some assessments to replenish that fund have been made upon member banks, but at the time this action was brought the fund was still insufficient to pay all of the guaranteed deposits of the State Bank of Hope, and defendant was in doubt as to whether the next assessment upon member banks would increase the fund sufficiently for that purpose. The question is raised, whether he should pay *pro rata* as far as the money is available for that purpose, or whether he should delay payment until all the certificates issued to depositors of the State Bank of Hope can be paid in full, or at least until he is certain that the next assessment on member banks will raise enough money to complete such payment. The statute provides:

"If at any time the available funds in the bank depositors' guaranty fund shall not be sufficient to pay all guaranteed deposits of any failed bank, the five assessments herein provided for having been made, the bank commissioner shall pay depositors *pro rata,* and the remainder shall be paid when the next assessment is available." (R. S. 9-204.)

There should be no delay in payment by reason of the fact that the fund is insufficient to pay these certificates in full, but the fund on hand should be paid *pro rata* to the holders of certificates issued to depositors of the State Bank of Hope. The words "next assessment" used in the statute just quoted should be read in the plural if necessary. That is to say, the defendant should pay *pro rata* as far as the bank guaranty fund will permit. From the next assessment he should pay the claims in full, if the funds are sufficient. If not, he should pay *pro rata* as far as the fund will permit, and from the next assessment pay in full, or *pro rata,* as the fund permits, and thus continue until the certificates issued to guaranteed depositors of the State Bank of Hope have been fully paid.

From what has been said, it necessarily follows that plaintiff's motion for the peremptory writ should be sustained; but since this proceeding is primarily to determine legal questions the writ will not issue unless that becomes necessary.