No. 29,073.

WILLIAM A. SMITH, Attorney-general, etc., *Plaintiff*, v. H. W. KOENEKE, Bank Commissioner, etc., *Defendant.*

(280 Pac. 767.)

Opinion filed October 5, 1929.

*William A. Smith,* attorney-general, and *Leon W. Lundblade,* assistant attorney-general, for the plaintiff.

*R. O. Mason,* of Columbus, and *Lee Bond,* of Leavenworth, for the defendant.

The opinion of the court was delivered by

HOPKINS, J.: This is an original proceeding in mandamus by the attorney-general to compel the bank commissioner to return to

certain banks bonds deposited by them and held by him, under the provisions of the bank guaranty law. (R. S. 9-201 *et seq.*) The bank guaranty law was repealed by chapter 89 of the Laws of 1929, and provision made for the return of such bonds. The bank commissioner questions the validity of the act. The section requiring return of the bonds reads:

"The state bank commissioner is hereby authorized and directed to return to all banks participating in said depositors' guaranty fund which have paid all assessments made by the bank commissioner up to the time this act takes effect, all bonds and money deposited with the bank commissioner as security for the payment of such assessments. The state treasurer shall return to the state bank commissioner all such bonds and money upon request of said bank commissioner." (Sec. 2.)

The defendant contends that the act is unconstitutional because it deprives certificate holders in failed banks which were members of the guaranty fund of vested statutory rights without due process of law.

A brief review of the depositors' guaranty law as it existed prior to the enactment of the act in question may be helpful. (R. S. 9-201 to 9-217.) There had been some amendments to the law since 1923, but they are immaterial here. R. S. 9-201 provided for the voluntary membership of state banks in the state guaranty fund. No bank was compelled to become a member. Each acted voluntarily through its board of directors and stockholders in applying for membership. R. S. 9-202 provided for the deposit of bonds or money as evidence of good faith that the depositing bank would pay all assessments levied against it during its membership and otherwise comply with the requirements of the act. At the time of the passage of chapter 89 only thirty-three banks remained members of the depositors' guaranty fund, and they could not withdraw the bonds deposited by them except in compliance with the then existing law. The statute provided that—

"Any bank electing to withdraw from the bank depositors' guaranty fund may do so by giving notice to the bank commissioner and displaying a card as aforesaid, and at the expiration of the six months as aforesaid, may receive its bonds (provided always that said bank shall have paid assessments in full to date) when the affairs of all failed banks in liquidation at the expiration of said six months shall have been closed up and the bank shall have paid its assessments on account of same." (R. S. 9-205.)

R. S. 9-204 provided that when any bank, a member of the depositors' guaranty fund, should fail, the bank commissioner should

issue a certificate bearing six per cent interest to each of its depositors secured by the fund for the amount of his deposit; that dividends be paid the certificate-holding depositors until the assets of the failed bank were exhausted; that after the payment of the last dividend by the officer in charge of the failed bank, the balances due on certificates issued as aforesaid should be certified to the bank commissioner, who should draw checks for the balances due, payable to the various depositors, on the depositors' guaranty fund. R. S. 9-202 provided for the making of assessments by the bank commissioner upon the member banks to the amount of one-twentieth of one per cent of the available deposits of a member bank eligible to guaranty, less its capital and surplus. R. S. 9-203 provided for the annual assessment of a like amount against member banks and also that in extreme cases the bank commissioner might make as many as five assessments during the calendar year.

When the several state banks made application to become members of the system, it was necessary for them to deposit bonds, money or other securities, with the state treasurer subject to the order of the state bank commissioner, as a guaranty that they would pay all the assessments which should become due during the period they were members of the system, and that they would abide by the provisions of the bank guaranty law, which included the declaration that "any bank electing to withdraw . . . may receive its bonds . . . when the affairs of all failed banks in liquidation at the expiration of said six months shall have been closed up and the bank shall have paid its assessments on account of same." (R. S. 9-205.) In other words, when there were failed banks against which certificates of deposit had been issued it was the duty of the bank commissioner not only to levy assessments on the other members of the system with which to pay the certificate holders but, when necessary, to exhaust the bonds on deposit to satisfy certificate holders of all failed banks whose affairs were not closed at the end of said six months.

*State, ex rel., v. Bone,* 120 Kan. 620, 244 Pac. 852, was a case in which the state, on relation of the attorney-general, sought to compel the bank commissioner to sell the bonds of certain banks for the payment of unpaid assessments levied by the bank commissioner against such banks. In the opinion it was said:

"As to the bank voluntarily withdrawing under that act, its bonds pledged should be returned to the withdrawing bank unless at that time there are

certificates on the guaranty fund which have been issued to depositors of failed member banks then in process of liquidation. If such certificates are outstanding and it is necessary to make future assessments to replenish the depositors' guaranty fund so that such certificates may be paid, the bonds (or money) pledged of the withdrawing bank can be converted into the bank depositors' guaranty fund only to the extent that they may be necessary to pay assessments later made to replenish the bank depositors' guaranty fund to enable it to pay the certificates drawn on that fund in favor of depositors of failed member banks then in liquidation. If all of its bonds pledged are not needed for that purpose, the residue should be delivered to the withdrawing bank. These bonds (or money) were pledged for that purpose, and, like any property pledged for a specific purpose, may be sold to the amount necessary to make good the purpose of the pledge." (p. 629.)

See, also, *Thompson v. Bone,* 122 Kan. 195, 251 Pac. 178; *State, ex rel., v. Bone,* 125 Kan. 818, 266 Pac. 85.

It is argued that the banks noted in plaintiff's petition had paid up all assessments until the time of the repeal of the act in question and complied with every legal requirement of the state bank commissioner, and that to use the bonds for the purpose of liquidating claims on the guaranty fund after payment of the required assessments would be a different use from that for which the bonds were pledged. This contention cannot be sustained. The banks had not complied with all the provisions of their pledges until the affairs of all failed banks not liquidated at the end of six months had been closed. Their bonds constituted a trust fund for the benefit of certificate holders of such failed banks; and while the legislature could repeal the bank guaranty act, it could not destroy or take away the fund then existing, to the detriment of such certificate holders. Each certificate holder had a vested right to a certificate bearing interest at the rate of six per cent per annum for the amount of his deposit; a vested right to be paid from the assets of the failed bank and from the depositors' guaranty fund. He had likewise a vested right to partake of the proceeds of the bonds then on deposit.

We conclude that chapter 89 of the Laws of 1929 was valid in its repeal of article 2, chapter 9 of the Revised Statutes of 1923, but that it was invalid and of no effect in so far as it attempted to authorize return of the bonds in question.

The writ is denied.

MARSHALL, J., dissenting.