No. 31,929

Allen Meyers, Receiver of the Mansfield Bond and Finance Corporation, *Plaintiff*, v. The Kansas State Corporation Commission, Homer Hoch, Jesse W. Greenleaf, Ernest E. Blincoe, Commissioners, *Defendants*.

(33 P. 2d 308.)

Opinion filed June 9, 1934.

*Allen Meyers, Balfour S. Jeffrey* and *Warren W. Shaw,* all of Topeka, for the plaintiff.

*Hart Workman, Charles W. Steiger* and *Frank P. Eresch,* all of Topeka, for the defendants.

The opinion of the court was delivered by

Hutchison, J.: This is an original proceeding in mandamus by the receiver of the Mansfield Bond and Finance Corporation of Topeka; appointed by the district court of Shawnee county, against the Kansas state corporation commission and its three commissioners to require the defendants to turn over to the plaintiff receiver the $55,000 of securities, consisting of real-estate mortgages and some bonds, in the hands and under the control of the defend-

ants, being deposited and held for the benefit of the owners of bonds issued by the Mansfield Bond and Finance Corporation under the provisions of the speculative-securities act and the several amendments thereto.

The receiver was not appointed to liquidate and settle the affairs of the Mansfield corporation, but was appointed for the benefit of creditors and others interested therein on account of the insolvency of the corporation.

An alternative writ was issued to turn over the securities in question, or show cause why a peremptory writ should not issue. Attached to the alternative writ are three exhibits, A, B and C, respectively, the journal entry of the appointment of the receiver prescribing and enumerating his duties in detail, the request or demand of the receiver for the securities so held by defendants after showing his qualification as receiver, and the reply of the corporation commission and its members declining to comply with such a demand.

The return of the corporation commission and its three members admits many of the statements and allegations in the original complaint and the alternative writ, but specifically denies the following: that the receiver is engaged in dissolving and liquidating the assets of said corporation for the benefit of the bondholders, that the receiver is entitled to said securities and that he is the proper party to liquidate said securities and pay the proceeds thereof to the bondholders. The return further denies that the defendants have no power to maintain actions at law or in equity to foreclose any of the mortgages in default or otherwise liquidate the other deposit of securities, denies that they have sufficient records and other means necessary to foreclose and liquidate said securities, and denies that the defendants are unlawfully withholding and refusing to deliver said securities to the plaintiff. And defendants allege that the said securities constitute a trust fund for the benefit of the bondholders of the Mansfield Bond and Finance Corporation and were pledged by the Mansfield Bond and Finance Corporation, with the corporation commission as trustee, in trust to secure and protect the holders of first-mortgage savings bonds, and that as such trustee it is empowered, authorized and required to liquidate such securities for the benefit of such bondholders so that the bondholders may have a right to such securities under such pledge superior and prior to the rights of attaching creditors.

There was no evidence introduced by either party. The issues involved are all questions of law, either the construction of certain statutes or applying them to the facts set out in the exhibits to the alternative writ.

The plaintiff maintains that the statutes of Kansas neither expressly nor impliedly provide the defendants with power or authority to liquidate the securities and distribute the proceeds to the bondholders. The defendant corporation commission maintains that such securities so deposited· are a trust fund, and because they are a trust fund and the commission is trustee, it is necessarily authorized to carry out the trust. Many definitions of a trust are cited and applied to the situation in the case at bar, and the decision in the case of *Vandiver v. Poe*, 119 Md. 348, is quoted as confirming the view that the securities are a trust fund and the corporation commission is a trustee, and because of such the corporation commission alone is the party authorized and empowered to liquidate these securities for the benefit of the bondholders. In the Maryland case just cited the statute quoted in the opinion specifically denominates the securities as a trust fund and the state treasurer as the trustee. The supreme court, in commenting on this statute, said:

"This presents the case of a fund distinctly required by a legislative act of assembly as a condition of doing business, designated as a trust fund for a specific purpose with a trustee created by the act, and the mode of the execution of his trust in some measure pointed out." (p. 352.)

Plaintiff in this connection cites a Missouri and a New York case, both of which are mentioned in the opinion in the Maryland case. In both of these cases, as the plaintiff concedes, the statute directs that the insurance commissioner turn over to the duly appointed receiver of the failing company all the securities in his hands, or the proceeds of them, for distribution by the receiver as the court may direct. No such provision is found in the Kansas statutes on this subject; neither are we cited to any statute in the article on speculative securities or the amendments thereto denominating such securities as a trust fund or the corporation commission as a trustee. Neither has our attention been directed to any provision in our statutes on this subject expressly giving the corporation commission authority to liquidate these securities and distribute the proceeds to the bondholders. If such power does exist, it certainly must be by implication.

On April 9, 1927, the bank commissioner, under the order of the

charter board of this state, granted a permit to the Mansfield Finance Corporation to sell its first-mortgage savings bonds on condition—

"That the Mansfield Finance Corporation shall at this time deposit with the bank commissioner first real-estate mortgages to an amount not less than $10,000, and said corporation shall at all times keep on deposit with the bank commissioner sufficient first-mortgage loans approved by the bank commissioner on Kansas real estate in an amount at least 10 per cent in excess of its outstanding liabilities, provided that on all business hereinafter written, said liability on said business to be determined by the liability as stated and defined in the contracts of said company, said company may, in case of payment, assignment, or foreclosure of any of said mortgages, withdraw the same and substitute therefor other mortgages of a like or greater amount."

The permit further contained the following statements:

". . . the aforesaid notes, bonds and mortgages or other security of said company, when deposited with the bank commissioner of the state of Kansas, as herein provided, to secure the investors in the bonds and contracts of this company, shall be held and kept by the said bank commissioner so long as any liability exists on said bonds or contracts according to their terms; said company may withdraw securities as said liability decreases so long as they do not withdraw securities below 10 per cent in excess of the liability of the said company on its bonds. . . .

"In case of liability on the part of the Mansfield Finance Corporation arising in favor of any person upon any bond sold, the bank commissioner may when such liability has been agreed upon by the parties or defined by any court of competent jurisdiction, dispose of the securities deposited with him in an amount sufficient to satisfy such liability."

At the time of issuing this permit R. S. 17-1204 was in full force and effect, and under that section such permits were then issued. That section nowhere fixes in detail the amount of securities or guarantee necessary, but the charter board and the bank commissioner are by it authorized to make such requirements as they think best. In the closing portion of this long section reference to the securities as being "held in escrow" occurs, and also the following statement:

". . . and no assignment or transfer of such securities in escrow shall be binding upon the bank commissioner unless approved by the said charter board."

This law was repealed in 1929, and R. S. 1931 Supp. 17-1229 took its place, where the securities directed to be deposited with the bank commissioner are many times referred to as being held by him "in escrow," and in no place are they referred to in specific words as

being a trust fund or the bank commissioner being a trustee. Subdivision (11) of said section authorizes a substitute for the bank commissioner as a trustee to be approved by the charter board. It also for the first time puts into the statute the terms and conditions which theretofore were made and outlined by the charter board and the bank commissioner duly authorized by the statute so to do. The following is subdivision (11) of section 7 of chapter 140, Laws of 1929, cited by both parties, and compiled as R. S. 1931 Supp. 17-1229:

"*Provided further,* That before any permit to sell securities in this state shall be issued to any person engaged in the business of soliciting or receiving deposits or payments on bonds, certificates or contracts, or other instruments in the nature thereof, by whatever name known or called, in fixed and stipulated installments issued and sold by any corporation having a paid-up capital of less than one hundred thousand dollars ($100,000), the charter board may require such person to deposit with the bank commissioner, or with a trustee to be approved by the charter board, securities approved by the bank commissioner amounting to at least twenty-five thousand dollars ($25,000), and shall maintain at all times a deposit with said bank commissioner, or with said trustee, securities in good standing and not in default approved by said bank commissioner to an amount equal to at least one hundred per cent (100%), but not more than one hundred twenty per cent (120%) of the liabilities on all outstanding contracts sold and held in Kansas."

In this subdivision it will be observed that the securities required to be left with the bank commissioner are referred to as a deposit. In other subdivisions of the same section reference is made to the matter of guaranteeing the bonds by the deposit of such securities. This subdivision was amended at the special session of the legislature in the fall of 1933, but no change was made therein except to substitute the name of the corporation commission for the bank commissioner, and to eliminate the name of the charter board where it occurred. It would seem that if the legislature intended to make the securities so held by the bank commissioner, or the corporation commission, a trust fund more appropriate terms than "deposit," "escrow" and "guaranteeing" could easily and well have been used.

Reference is made to the many decisions rendered concerning the Kansas bank guaranty law, among which are *State, ex rel., v. Bone,* 120 Kan. 620, 244 Pac. 852; *Thompson v. Bone,* 122 Kan. 195, 251 Pac. 178; *State, ex rel., v. Bone,* 125 Kan. 818, 266 Pac. 85; and *Smith v. Koeneke,* 128 Kan. 805, 280 Pac. 767. In some of these cases the securities deposited by the different banks are incidentally

referred to as trust funds, although that does not seem to have been the special question involved or litigated.

A clear distinction between the bank guaranty law and the speculative securities act is that in the former there was no liability of the bank making the deposit beyond the deposit made, while under the securities act the company issuing the bonds is liable for the full amount of the bonds it issued, regardless of the deposit. The statutes concerning the holding and disposing of securities under the bank guaranty law are much fuller and more specific as to the duties of the bank commissioner and the state treasurer than in the securities act, and since the bank had no further liability than the making of the deposit, the opinion in the last case above cited concludes with a ruling as to meeting the expenses out of the securities deposited.

The case of *Bank v. Bank*, 80 Kan. 205, 101 Pac. 1005, is cited and concerns the superior right of a pledgee of a certificate of stock to secure a debt as against the right of a subsequent attaching creditor.

We think the question of the liability of the securities company affords a decided distinction in cases under the speculative securities act and the bank guaranty act, where no liability whatever existed on the bank above and beyond the securities deposited. Besides, the legislature has, with noticeable caution in its many acts on this subject, avoided a reference to the fund as a trust fund, or the bank commissioner as a trustee thereof, and has refrained from equipping him with facilities and methods of handling such escrow fund when it needs liquidation for the protection of the holders of bonds secured thereby. It is the duty and obligation of the company issuing the bonds to make them good to the holders thereof. It should, unlike the situation in the bank guaranty case, bear whatever expense there may be involved in liquidating the same to the best advantage possible. Of course there is an element of trust in the handling of all escrow matters, deposits or pledges, but not sufficient in this case to justify calling the securities so deposited a trust fund to the extent to which this term is usually applied.

It is not necessary in this case to conclude that these securities so deposited partook of none of the elements of a trust fund, nor that the corporation commission had no duty devolving upon it similar to that of a trustee, nor that it had no right, power or authority

by statute or otherwise to liquidate or protect such deposits as may need foreclosure or other attention for liquidation purposes; but it can be and is concluded that the corporation commission has no exclusive or paramount right or authority to liquidate them and dispose of the proceeds, especially when a court of competent jurisdiction has appointed a receiver to liquidate the financial affairs of the insolvent corporation which had, while solvent, deposited these securities when under the statute the company was, and still is, obligated for the amount of the bonds for which the securities were deposited.

We think the receiver of the insolvent company is a proper official, under the supervision of the district court, to handle these securities deposited with the corporation commission and to foreclose or liquidate them solely for the use and benefit of the holders of the bonds for which they were deposited to secure, and at the same time to protect the interests of the insolvent company which is obligated to pay all such bonds. But these securities must be kept entirely separate from the other funds or property of the insolvent company, and all the proceeds of such securities, as well as the securities themselves, shall be for the exclusive use and benefit of the holders of the bonds secured thereby. No foreclosure or other expense in connection with the liquidation of such securities shall be paid out of such securities or the proceeds thereof unless by the approval, in writing, of the holders of a majority of the bonds secured thereby, making due allowance for the loans or other payments made on such bonds so secured. The corporation commission should make such assignments and transfer as may be necessary to give the receiver full power and authority to handle and liquidate such securities. A receipt in full for such securities by the receiver to the corporation commission shall fully release the latter from all and any further liability concerning the same. It may be properly observed that the record shows the securities company has changed its name since the permit was first issued to it.

The judgment should be for the plaintiff under the conditions and restrictions herein expressed.

The writ is allowed.