No. 34,407

THE KANSAS CITY LIFE INSURANCE COMPANY, and RAY B. LUCAS, Superintendent of Insurance of the State of Missouri, *Plaintiffs,* v. HENRY BANAKA, Register of Deeds of Jackson County, *Defendant.*

(92 P. 2d 63)

Opinion filed July 8, 1939.

*E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, for the plaintiffs.

*Jay S. Parker,* attorney general, *E. V. Bruce,* assistant attorney general, and *Dean Shrader,* county attorney, for the defendant.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus. The motion for the writ alleges that the Kansas City Life Insurance Company, hereinafter called the plaintiff, is a corporation organized under the laws of Missouri, is engaged in the life insurance business, and is authorized to do business in Kansas; that prior to February 16, 1939, plaintiff became temporarily seized and possessed in satisfaction of debt of certain described land in Jackson county, Kansas, and that in accordance with the laws of Missouri plaintiff made and executed its note and deed of trust to the superintendent of insurance of that state, a copy of which was attached to the petition and is set forth in the margin; that on March 4, 1939, plaintiff presented the deed of trust to the defendant, as register of deeds of Jackson county, for record, and tendered therewith the regular recording fee; that defendant refused to record the deed of trust unless there was paid thereon a registration fee for each $100, or major fraction thereof, mentioned in the note, the sum of 25 cents, assigning as his reason for so refusing to record the deed of trust that it is a mortgage, as defined in G. S. 1935, 79-3101, 79-3102 and 79-3103, and therefore subject to the registration fee provided for in the statute. Plaintiff further alleged that it was organized and is doing business under article 2, chapter 37 of the Revised Statutes of Missouri for 1929, and that the laws of the state of Missouri governing and con-

trolling such life insurance company in relation to their deposits to the superintendent of insurance of the state are as follows:

"All life insurance companies organized under the provisions of article 2, chapter 37, Revised Statutes of Missouri, 1929, shall deposit with the superintendent of the insurance department, in addition to other amounts required by law to be deposited by life insurance companies before such companies are permitted to engage in the business of issuing policies of life insurance and annuity bonds, cash or securities of the kind and type in which life insurance companies are required to invest their funds under section 5921, R. S. of Mo. 1929, as same now is or as same may be hereafter amended, in an amount sufficient to equal the net value on all policies or annuity bonds hereafter issued by such companies, the amount thereof to be determined by an evaluation made in accord with the provisions of this chapter." (Laws of Missouri, Extra Session, 1933-1934, § 5704.)

"After making the deposits mentioned in section 5704, the company shall issue its policies of insurance or annuity bonds, having upon the face a certificate in the following words: 'This policy is registered and the net reserves secured by a pledge of bonds or deeds of trust on real estate deposited with this department'; such certificate shall be signed by the superintendent of the insurance department or his authorized deputy and sealed with the seal of his office; and such policies and annuity bonds shall be known as registered policies and annuity bonds. The superintendent shall prepare and keep a permanent register thereof so that he and his successors will be enabled to compute the net value of such policies or annuity bonds at any time. The provisions of this section pertaining to the registration of policies shall not apply to policies issued on the industrial or prudential plans except when such policies exceed five hundred ($500) dollars in amount." (Laws of Missouri, Extra Session, 1933-1934, § 5705.)

"On the first days of January and July of each year, or within sixty days thereafter, the superintendent shall cause the registered policies and annuity bonds of each company outstanding and in force to be carefully valued, and whenever the total of the actual net value of such policies and annuity bonds exceeds the market value of the securities on deposit, the company issuing such policies or annuity bonds shall immediately deposit sufficient securities of the same kind and type provided for in section 5921 to equal the net value of such policies and annuity bonds so that the market value of the securities deposited shall always be equal to the actual net value of the registered policies and annuity bonds issued by such company and still in force." (Laws of Missouri, Extra Session, 1933-1934, § 5706.)

"Should any company depositing under section 5704 become the owner of real estate for its own use and accommodations, or become temporarily seized and possessed of real estate, in satisfaction of debt, for which such real estate was pledged for security, such company may execute its own note for the value of such real estate, payable to the superintendent, as trustee, and secure the said notes or bonds by duly recorded deeds of trust of said real estate; which notes or bonds thus secured may be deposited with said superintendent as proper security, under and according to the provisions of this article, said

value to be subject to the approval of the superintendent of the insurance department." (Revised Statutes of Missouri, 1929, §5709.)

"The securities deposited under the provisions of section 5704 shall be legally transferred to the superintendent of the insurance department, and so large an amount thereof as may be necessary to equal, at all times, the net value of the outstanding registered policies and annuity bonds, less such liens not exceeding such value as the company may hold against them, shall be held by him in trust for the purposes of this article, until the obligations of said companies, under said registered policies and annuity bonds shall, to the satisfaction of the said superintendent, be fully liquidated, canceled or annulled." (Revised Statutes of Missouri, 1929, § 5713.)

Plaintiff further alleged that there is no indebtedness secured by the deed of trust, and that it is not indebted to the superintendent of insurance of Missouri; that the sole purpose of the deed of trust and the recording thereof is to comply with the statutes of Missouri in the transfer of the title to the real estate described therein to the superintendent of insurance, to be held by him in trust in accordance with the statutes of that state; and it is alleged that the deed of trust is not a mortgage as defined by the statutes of Kansas and is not subject to the registration fee. The prayer is that defendant be commanded to record the deed of trust on the payment of the recording fee without charging the registration fee provided for the registration of mortgages.

Defendant has filed a motion to quash. This is tantamount to a demurrer and raises the question whether the facts stated in the petition are sufficient to entitle plaintiff to the relief sought.

Generally speaking, our statutes (G. S. 1935, 79-3101, 79-3102 and 79-3103) provide that when a mortgage of real property is recorded there shall be paid, in addition to the regular recording fees, a registration fee of 25 cents for each $100, or major fraction thereof, of the note or debt secured by the mortgage, and that upon such payment the mortgage and the note to be secured shall not be taxable otherwise. The statute (G. S. 1935, 79-3101) defines certain words and phrases used therein. The one pertinent here reads:

"The words 'mortgage of real property' shall include every instrument by which a lien is created or imposed upon real property."

Therefore, the primary question is whether the deed of trust in question is an "instrument by which a lien is created or imposed upon real property." We think a reading of the deed of trust and the note makes it clear that the instrument created or imposed a lien upon the real property described therein. That is declared in the

note and repeatedly stated in the deed of trust. We have printed these instruments and italicized certain phrases to make that clear. They need not be repeated here.

Plaintiff argues that in reality there is no debt secured by this deed of trust, and therefore it is not a mortgage. The point is not well taken. A valid mortgage may be made to secure future advances as well as for an existing liability. *(Union State Bank v. Chapman,* 124 Kan. 315, 259 Pac. 681, 41 C. J. 462.) Also, a valid mortgage may be given to indemnify against a contingency which in fact may never happen. *(Garden City Nat'l Bank v. Gann,* 121 Kan. 159, 246 Pac. 971.) It need not be founded on a present debt. It may be given to secure the performance of obligations. (41 C. J. 459, 19 R. C. L. 295.)

Under the statutes of Missouri above quoted, plaintiff is required to secure its policyholders to the extent stated in the statutes. This is done by depositing with the superintendent of insurance securities of certain classes. Mortgages on real property, or deeds of trust in the nature of such mortgages, may be used for that purpose. From the record it appears plaintiff previously had a deed of trust in the nature of a mortgage on the real property covered by the instruments here in question, which it foreclosed, and plaintiff acquired the title to the real property by a sheriff's deed. The Missouri statutes then permitted plaintiff to execute a note, payable on demand, to the superintendent of insurance, as trustee, for the amount it had invested in the property and secured the note by a deed of trust, which is in the nature of a mortgage, and deposit those with the superintendent of insurance in lieu of the mortgage it previously held on the same land. This is to secure its liability to its policyholders. We see no reason for saying that it does not "create or impose" a valid lien on the property. Any purchaser of the property from plaintiff would be bound to see that the note secured by this deed of trust was paid. Any attachment or execution against plaintiff levied on this property would be subject to the deed of trust and the note secured thereby. We think any title examiner, passing on an abstract of title to the property, would be remiss in his duty if he did not advise his client that the deed of trust evidences a lien upon the property for the amount of the note secured thereby.

Plaintiff points out that our statute (G. S. 1937 Supp., 40-404a) provides in substance that when a life insurance company that has a mortgage on a piece of property, which mortgage had been deposited

with the commissioner of insurance as security for its reserve, has to foreclose the mortgage, and becomes temporarily the owner of the land, it may convey the land to the commissioner of insurance, the title to be held as security for the reserve. It is argued that the Missouri transaction is the same, that in legal effect the title to the property is conveyed to the superintendent of insurance of Missouri, and that there should be no tax on the instrument. The difficulty with the argument is that the statutes of Missouri do not authorize the execution of the deed to the superintendent of insurance of Missouri in such a situation; neither does the deed of trust attempt to transfer title to the real property from plaintiff to the superintendent of insurance. In *McDonald & Co. v. Kellogg, Trustee*, 30 Kan. 170, 2 Pac. 507, it was held:

"Where a deed of trust is executed with the understanding betweeen the parties that the title is to be transferred forever from the grantor to the grantee and his heirs or grantees, such deed of trust is not a mortgage; but where the deed of trust is executed with the understanding between the parties that it is a mere security for a debt, and that when the debt is paid the title shall be again placed in the grantor, such deed of trust is a mere mortgage. . . . " (Syl. ¶ 2.)

See, also, 41 C. J. 283.

For the purpose of foreclosure our statute (G. S. 1935, 60-3107) treats this kind of a deed of trust as a mortgage, and many of the instruments sued upon in the foreclosure cases in this state are in the form of deeds of trust.

The fact that the statutes of Kansas authorize a life insurance company, which becomes temporarily possessed with a title to real property by foreclosure action, to deed the property to the commissioner of insurance to be held as a part of its reserve, and the statutes of Missouri do not authorize such a deed to be made, does not convert the deed of trust authorized and executed under the Missouri statute into a deed. It remains under the Missouri statute a deed of trust to secure a note for a specified amount, satisfaction of which note "may be enforced only by payment, substitution or foreclosure;" and the deed of trust provides, upon failure of plaintiff to pay the amount of the note, or to deposit other securities in lieu thereof, "the said note shall be deemed to be due and payment thereof in default, and second party may take such action at law or in equity as may be appropriate and effective to enforce said note and to foreclose the lien therein created and to subject the title in fee simple of the above-described real estate and premises by sale or

otherwise to the satisfaction of the same." It is clear no title to the real property passes by the deed of trust alone. Such title does not pass until there is default in the payment of the note, or in substituting other security for it, and after appropriate legal procedure for the foreclosure and sale of the real property.

Plaintiff points out that under the decision of the supreme court of Missouri (*State, ex rel. Hyde, v. Falkenhainer*, 309 Mo. 381, 274 S. W. 722) the superintendent of insurance of that state is the custodian of the securities deposited with him by life insurance companies to secure their liabilities on policies, but that he has no authority to maintain an action to foreclose mortgages so placed with him; that this must be done by a receiver appointed by the court. Similar holdings have been made with respect to similar securities deposited for the same purpose with the commissioner of insurance, as required by the laws of this state. (See *Hobbs v. Occidental Life Ins. Co.*, 87 F. 2d 380; *Meyers v. State Corporation Comm.*, 139 Kan. 890, 33 P. 2d 308.) We are not concerned so much here with what official has authority to maintain a foreclosure action; the real point is whether, if the condition arises that justifies it, an action can be maintained to foreclose this deed of trust as a mortgage. Unquestionably that can be done both under the authorities of Missouri and of Kansas.

Lastly, plaintiff argues that this deed of trust should not be regarded as a mortgage because of our retaliatory statute (G. S. 1935, 40-253), which provides that if a foreign state imposes taxes on Kansas insurance companies authorized to do business in that state, that Kansas may impose like taxes, and that the state of Missouri has a similar statute (R. S. Mo. 1929, § 5935). We think the point is not important here. This is not a case dealing with the reciprocal tax features. That question can be determined when a case properly presenting it is before us.

From what has been said it necessarily follows that the writ prayed for should be denied. It is so ordered.

EXHIBIT A.

"DEED OF TRUST

(Italics inserted)

"This indenture, made and entered into this the 16th day of February, A. D. 1939, by and between Kansas City Life Insurance Company, a corporation organized and existing under the provisions of article II, chapter 37, of the Revised Statutes of Missouri for 1929, with its principal office in Kansas City.

Jackson county, Missouri, party of the first part (herein called first party) and the superintendent of the insurance department of the state of Missouri, and his successors in office, as trustee, party of the second part (herein called second party)—

"*Witnesseth:* Whereas, First party has become, and now is, seized and possessed of the following described real estate and premises, to wit (Here follows description), which said real estate and premises it has acquired in satisfaction of debt for which the same was pledged to it as security by written instrument recorded in book 84 at page 7 of the land records of the county of Jackson, in the state of Kansas, identified on the books of the first party as Loan No. 6,007, and which is now free and clear of liens and encumbrances; and

"Whereas, Prior to the acquisition of said real estate the note or other obligation evidencing such indebtedness to first party and secured by the instrument aforesaid had been on deposit with second party under the provisions of section 5,704, page 61, Laws of Missouri, extra session, 1933-1934, and section 5,921, page 64, Laws of Missouri, extra session, 1933-1934, as a part of the deposit of reserves required of said first party; and

"Whereas, It is the present purpose and intention of first party to make said real estate and premises available for deposit as provided in section 5,709, Revised Statutes of Missouri, 1929, in lieu of the aforesaid note or obligation, to the extent of the value of the aforesaid real estate and premises, and, in furtherance of such purpose, has made, executed and delivered to second party its note, as follows, to wit:

"Note

"$8,444.66           Kansas City, Mo., February 16, 1939.

"*On demand,* the undersigned, *Kansas City Life Insurance Company,* a corporation organized and existing under the provisions of article II, chapter 37, of the Revised Statutes of Missouri, 1929, with its principal office in Kansas City, Jackson county, Missouri, for value received, *promises to pay* to the superintendent of the insurance department of the state of Missouri, and his successors in office, as trustee, the sum of eight thousand and four hundred forty-four and 66/100 dollars (8,444.66).

"This *note* is described in, and is executed in connection with, a deed of trust of even date herewith, *so as to pledge,* and *to convey a first lien on,* the unencumbered real estate in said deed of trust described, for the purpose of depositing this note and said deed of trust under the provisions of section 5,709, Revised Statutes of Missouri for 1929, and section 5,704 and section 5,921, respectively, Laws of Missouri, extra session, 1933-1934. The duties and obligations of this maker under these said statutes is the sole and only consideration for the execution and delivery of this note and said deed of trust.

"Neither this note, nor any right, benefit or claim based upon, or growing out of it, is assignable, either directly or indirectly, except by operation of law, and *satisfaction hereof may be enforced only by payment, substitution or foreclosure* under the terms of the said deed of trust in connection with which it is executed.      Kansas City Life Insurance Company,

By Wood Arnold, Vice-President.

"Attest: C. N. Sears, Secretary. (Seal.)

"Now, Therefore, First party, *for the purpose of securing second party in the satisfaction of the aforesaid note,* and in consideration of the sum of one dollar ($1) to it paid, the receipt of which is hereby acknowledged, and in

further consideration of the premises herein stated, *does hereby pledge the aforesaid real estate* and premises *to second party, and does hereby give, grant and convey to second party a first lien thereon,* upon the following express conditions and covenants, to wit:

"1. The purpose hereof is to make the aforesaid note and this conveyance a reserve deposit of first party with second party under the provisions of section 5,709, Revised Statutes of Missouri for 1929, to the extent of the value of said real estate and premises, in the same manner and under the same conditions as reserve deposits are made and held under the provisions of section 5,704 and section 5,921, respectively, Laws of Missouri, extra session, 1933-1934.

"2. First party shall remain in the sole and exclusive possession, management and control of said real estate with the right to lease, rent and contract for the use and occupation thereof for its own use and benefit, and to make leases, grant easements and rights of way, and to enter into contracts with the government of the United States, and of the state and county in which said real estate and premises are located, and agencies thereof, pertaining solely to the use and improvement thereof, *the lien hereof being expressly subordinated thereto.*

"3. First party shall pay all taxes levied against said property promptly when due, and discharge all liens and claims *which might become superior to the lien hereby created,* and fully protect the same from any lien, encumbrance or claim of any kind superior to the first lien herein created.

"4. First party shall keep the buildings now, or hereafter erected on said premises, insured against loss from fire and tornado in such amount as the value of such buildings bears to the amount of the aforesaid obligation.

"5. First party *may enter into valid contracts for the sale of said real estate* and premises, or any part thereof, but, *before conveyance thereof, shall secure the release of the lien thereon hereby created* in the manner hereinafter provided.

"6. First party may, at its discretion, and at any time deposit with second party securities of the character specified in said section 5704 and section 5921, respectively, Laws of Missouri, extra session, 1933-'34, in lieu of the aforesaid note and this conveyance, and said second party shall immediately execute, acknowledge and deliver to first party an appropriate *release hereof* in writing, if he shall be satisfied, and only if satisfied, that such securities are of the value equal to or in excess of the face amount of said note.

"7. Neither this conveyance, nor any part of it, nor any right, benefit or claim based upon or growing out of it, is assignable, either directly or indirectly, except by operation of law.

"8. Whenever the aggregate amount of deposits made by first party and held on deposit by second party under the provisions of section 5704 and section 5921, respectively, Laws of Missouri, extra session, 1933-1934, and section 5709, Revised Statutes of Missouri for 1929, exclusive of the amount stated in the aforesaid note, shall exceed the aggregate amount of deposits by first party required by law, then all obligations in the aforesaid note and this conveyance shall immediately terminate, and said *second party shall,* upon demand, and at the first party's cost, *execute,* acknowledge and deliver *to first party an appropriate release* hereof in writing.

"9. Upon satisfaction of the *aforesaid note,* and the lien herein created, by substitution of other securities, by payment of the amount thereof or other-wise, second party shall make, execute, acknowledge and deliver to first party at its cost an appropriate instrument in writing, acknowledging full satis-faction of the aforesaid note and *release of the lien herein created* and all rights, interest and claim of second party hereunder, which acknowledgment of satisfaction and release shall be in writing and duly executed and acknowl-edged by second party and delivered to first party.

"10. Second party may give first party written demand and notice by mail to pay the amount of said note, or to withdraw the aforesaid note and this conveyance as a reserve deposit, stating therein the reasons therefor and ob-jections thereto, and, unless first party shall, within thirty days after receipt thereof, submit to second party evidence to his satisfaction (and of which he shall be the judge) that the aforesaid note and this conveyance, together with the first party's other reserve deposits, meet the second party's requirements with reference to the amount and· solvency of the reserve deposits to be maintained by said first party, *first party shall either pay the amount of said note to the second party* or deposit other securities to the satisfaction of second party, and of the character specified in section 5704 and section 5921, respectively, Laws of Missouri, extra session, 1933-1934, equal in amount to the aforesaid note, in lieu hereof, and *thereupon all obligations in said note, and in this deed of trust herein created,* shall *ipso facto* terminate, and acknowl-edgment of satisfaction and release hereof by written instrument shall be made, executed, acknowledged and delivered by second party to first party, at the first party's cost. In the event the first party shall pay the amount of the said note to the second party, the second party shall invest the amount so paid in securities of the character specified in sections 5704 and 5921, Revised Statutes of Missouri, 1929, as amended by extra session, 1933-1934, and hold the same on deposit under the requirements of the law.

"11. *Upon failure of first party to pay the amount of said note,* or to deposit other securities in lieu thereof, as provided in paragraph 10, *the said note shall be deemed to be due and payment thereof in default, and second party may take such action at law or in equity* as may be appropriate and effective *to enforce said note and to foreclose the lien therein created* and to subject the title in fee simple of the above-described real estate and premises by sale or otherwise to the satisfaction of the same. If proceedings for the enforcement of this conveyance shall result in the sale of the aforesaid real estate and premises, any balance from the proceeds of such sale remaining after satisfaction of said note, and payment of the costs of such proceedings, includ-ing a reasonable charge for legal services, shall be payable to first party, except that if a deficiency then exists in the reserve deposit of first party, second party shall retain the entire proceeds from the sale of said real estate and premises, after payment of costs incident to such sale, and invest any sum retained in the character of securities specified in sections 5704 and 5921, respectively, Laws of Missouri, extra session, 1933-1934, as a reserve deposit of the first party.

"12. Nothing contained in the aforesaid note and in this instrument shall be deemed or regarded as any waiver, release or forbearance of the provisions

of law which limit the period of time which the first party may hold, without disposal, the above-described real estate.

"In witness whereof, the said first party has caused these presents to be signed by its vice-president and attested by its secretary, and the corporate seal to be hereto attached, the day and year first above written.

"KANSAS CITY LIFE INSURANCE COMPANY,

"By WOOD ARNOLD, *Vice-President.*

"C. N. SEARS, *Secretary.* (Seal)."

The instrument was duly acknowledged.