## F. C. MARTSOLF v. ROBERT BARNWELL.

1. REPORT OF REFEREE; *When Conclusive as to Facts.* Where a case is tried before a referee who reports his findings of fact and conclusions of law, and no motion is made to set aside the report, the findings of fact become conclusive as to the facts of the case.

2. ——— *Conclusions of Law, for the Court.* The conclusions of law, however, drawn from these facts remain for consideration by the court, and if it is satisfied that the referee erred in such conclusions, it is

its duty to apply the law correctly, and render such judgment as is appropriate to the facts.

3. PRIORITY OF LIENS—*Mortgagee, and Mechanic.* Under the lien law of 1871, where a mortgage was executed and recorded on August 21st, and a contract to erect a hotel was executed and the work thereon commenced on August 23d, the lien of the mortgagee is prior to the mechanic's lien of the contractor.

4. ———— Where such mortgage did not upon its face provide for future advances, yet as a matter of fact the money was paid over at different times to the mortgagor, and only a small portion before the commencement of the work, but it did not appear that any part of the work done or materials furnished, which were not paid for and for which a lien was claimed, were so due and furnished before the last advancement of money by the mortgagor upon said mortgage, the lien of the mortgagee was properly adjudged the prior lien.

### *Error from Sedgwick District Court.*

AN action to foreclose a mortgage was brought by Charles McDougall as plaintiff, against Egbert J. Blood and wife, as mortgagees. *Martsolf* and *Barnwell* were joined as co-defendants. They answered separately—*Martsolf* claiming a mechanic's lien on the mortgaged premises, under a contract dated August 23d 1871, and *Barnwell* claiming under a mortgage executed and recorded two days earlier. The case was referred to C. C. N., who reported the facts as to each claim, but found as conclusions of law that *Martsolf's* lien was first, *Barnwell's* second, and McDougall's third, in order of priority. The district court, at the September Term 1873, upon the facts as reported, held that the referee erred in respect to the liens of *Martsolf* and *Barnwell*, and gave judgment in favor of the several lien-holders, and in the order of priority as follows: In favor of *Barnwell*, $5,000; in favor of *Martsolf*, $1,754.50; in favor of McDougall, $1,551. *Martsolf* appeals, and brings the case here on error for review.

*Sluss & Dyer*, for plaintiff in error:

The findings of fact by the referee being undisturbed by the court, are conclusive as to the determination of the questions of fact. The referee finds that the Barnwell note and mortgage were made August 21st, 1871; that prior to that

time Martsolf and Blood had agreed upon the terms of their contract, and it had been reduced to writing *by Barnwell*, and there was then an understanding had between Blood, Barnwell, and Martsolf, that Barnwell was to furnish the money to pay Martsolf, and to furnish it *as the work progressed*. Martsolf then had the right to suppose, when he began work, on the 23d, that no money had been advanced or would be advanced by Barnwell to Blood until after the work should be commenced. He had the right to suppose that Barnwell would not have any lien upon the premises until money was actually advanced, and then only to the extent of the advancement. (17 Ohio, 371.) He had the right to suppose that he would be entitled to a lien from the date of the commencement of the work. (Laws 1872, ch. 141, §1.) And although the mortgage was of record, in the absence of any proof of actual knowledge of it, and in the absence of proof of any knowledge that $400 had been advanced by Barnwell under the mortgage, he had the right to rely upon the arrangement made previously as to the time when the advances were to be made. This arrangement, which existed between the three, was evidently entered into in view of the terms of payment as expressed in Martsolf's contract with Blood.

The referee further finds that Barnwell from first to last recognized Martsolf as having the prior lien. But in any event, under the authorities cited, Barnwell could not claim a first lien for more than $400. But there are two things which should not be overlooked in determining even that: Barnwell, by his conduct, and agreement with Martsolf and Blood, *represented* to Martsolf that $6,000 would be advanced to pay him for the work — that this money should be advanced as the work progressed, in accordance with the terms of the engagements of Blood to himself. In violation of this engagement, Barnwell advanced Blood $400 *before* the work commenced, and before Blood was under any obligation to pay Martsolf anything; and finally failed and refused to advance the whole sum as he had agreed; and it is reason-

able to suppose Martsolf would have been paid in full if Barnwell had kept his agreement. These facts estop Barnwell from claiming even the $400 as a prior lien.

*A. L. Williams,* and *Ross Burns,* for defendant in error:

Notwithstanding the fact that Barnwell's mortgage was made and recorded before Martsolf made his contract, or commenced work, the referee found that Martsolf's lien was prior to the mortgage, and gave as his reasons for this conclusion of law the following:

"1st. The contract for the building was written out by Barnwell before the 21st of August 1871, and was executed August 23d, in presence of Barnwell; *therefore,* Barnwell is estopped to deny the priority of Martsolf's lien.

"2d. When the mortgage was made to Barnwell, (August 21st,) and the contract with Martsolf, (August 23d,) Blood only owned *one-half* of the lots. He afterward (December 18th 1871,) and before the filing of Martsolf's lien (January 29th 1872,) perfected his title to the whole property; *therefore,* such subsequently-acquired title inured, by operation of law to the benefit of the *junior* lien, to the exclusion of the *senior.*"

It is needless to say, that no rules of law or equity were even incidentally mentioned as tending to support such propositions. The lien under which plaintiff in error claims is purely the creature of statute law. Its terms, its force, its effect, and its priority, must be determined by that law. The lien law of 1871 is broad enough as it is, and the referee was not justified in interpolating new provisions by way of experiment. There might have been some shadow of excuse, if it had been shown, or even asserted, that Barnwell had concealed the existence of his mortgage. On the contrary, it is shown, and the fact dwelt on by the referee, that Martsolf knew all about the mortgage, and that Barnwell was to furnish the money to build the house. Under such circumstances the following, in the mechanic's-lien law of 1871, p. 252, will be found to not inaptly express the true rule of priority between the parties:

"Sec. 1. * * * Such lien shall be preferred to all other

liens and incumbrances which may attach to or upon such lands * * * *subsequent* to the commencement of such building."

It seems too plain for argument, that the whole proceedings before the referee were based either upon the deliberate intention to ignore the rights of a nonresident, or in gross ignorance of what those rights were. It may be a valid presumption of fact, that all persons who agree to erect houses will be compelled to file a lien to secure their pay; but the referee in this case makes it a presumption of law! The law presumes that every man will pay his debts, but, with prudent foresight secures to the creditor a remedy in any case where the presumption fails. Thus, the presumption of law in this case was, that Blood would voluntarily pay Martsolf what he owed him. But in case he did not, the law contracted for him that Martsolf should have a lien upon the premises improved, to date from the commencement of the improvements. All persons acquiring an interest after work is begun, do so warned by the law of a contingency which, if it arises, postpones their interest or claim to the lien of Martsolf. But the law does not, and cannot say, that a lien legally acquired upon property which is in no other way incumbered, can afterward, by operation of law, be postponed to the lien of a party who, at the time of making the first lien had no lien, and no right to a lien.

The second conclusion of law is equally objectionable. It may be conceded that the subsequently-acquired title of the mortgagor inured to the benefit of his mortgagee, and other lien-holders; but how it would have the effect to make the last lien better than the first is not so plain. If such after-acquired title does inure to the benefit of prior grantees, (and it is admitted that it does,) it has the effect to make perfect the grantor's title, and dates that perfected title back to the time of the first conveyance. In other words, the sheriff's deed of December 18th 1871 made Blood's title good on the 21st of the preceding August, and left the mortgagee and lien-holder's questions of priority in the same situation they

would have been had Blood's title been originally perfect. On the 18th of December 1871, then, Blood's title became perfect. How, under such circumstances, can it be held, that an inchoate lien—a lien not yet in existence, a lien which may never exist, and which in truth does not become a lien until January 29th 1872—can relate back and take precedence of a mortgage duly recorded before the commencement of the work upon which the lien is founded?

The opinion of the court was delivered by

BREWER, J.: The question in this case is as to the priority of certain liens. The matter was tried before a referee, who filed his report, with findings of fact and conclusions of law. He gave plaintiff in error priority over Barnwell, defendant in error. The district court, however, upon the facts as reported by the referee, awarded priority to Barnwell. No objection was made by plaintiff in error to the referee's report, and no motion made by him to set it aside. The facts therefore as found by the referee, are beyond question, and the only matter for consideration is the judgment required upon such facts. The district court was not bound by the conclusions of law of the referee, any more than this court is bound by the conclusions of the district court. It was the duty of that court, upon examination of the facts found, to see that the proper judgment was entered upon them, whatever might have been the conclusions of the referee, as it is the duty of this court upon a reëxamination to see if there has been any error in the conclusions and judgment of that court, and if so to direct the entry of the proper judgment.

Which lien was prior? Barnwell claimed a mortgage; Martsolf a mechanic's lien. Barnwell's mortgage was executed and recorded August 21st, 1871. Martsolf's contract for work was executed, and his work commenced, August 23d, 1871. Upon this alone, Barnwell would have unquestioned priority. As against this, it is claimed that, prior to the execution of the mortgage there was an understanding between the mortgagee, the lot-owner, and Martsolf, by which Martsolf

40—15 KAS.

was to erect a building, and the mortgagee was to advance to the lot-owner the money needed to pay for the work as it progressed, and that the mortgagee had actually drawn up the contract for the work between the lot-owner and Martsolf; and that from that understanding Martsolf had a right to suppose, on the 23d, when he executed his contract and commenced work, that no money had actually been advanced,. or mortgage executed. We fail to appreciate the force of this argument. It does not seem reasonable that a lot-owner would sign a contract for the construction of a large building, (in this case a hotel,) before he either had the money to pay for it, or had perfected arrangements to obtain it. Martsolf then ought to have presumed, if he was acting upon presumptions, that if money was to be borrowed the security therefor would be perfected before the building contract was signed. But the rights of these parties do not rest upon presumptions. The mortgage was on record, and Martsolf was chargeable with notice of its existence. He could acquire no rights against it, or in precedence of it. If doubtful about payment, or unwilling to risk the security of a second lien, he could decline the proposed contract.

Again: It is said that the money was to be advanced as the work progressed, and that in fact only a small portion was advanced prior to the commencement of the work, and that therefore to the extent of such prior advancement alone could Barnwell's mortgage be preferred to the mechanic's lien. In this we think counsel are mistaken. The mortgage was for a single, fixed amount, and contained no provision for future advances. Now, if it be true, that equity will look behind the face of the mortgage, and date the liens from the times of the several advances of money by the mortgagee, (and upon this question we express no opinion,) it will also upon the same principle date the mechanic's liens from the times of furnishing material and doing work. If the one can claim a lien only from the time of paying over his money, surely the other can claim his only from the time of supplying material and doing work. At such times only

does either mortgagee or. mechanic part with, or mortgagor and lot-owner receive, value. And if this is the test of lien, it must be so for both alike. Now it does not appear that Martsolf supplied any material, or did any work for which he did not receive pay, or for which he claimed a lien, prior to the last advance of money by the mortgagee. Under those circumstances he is in no position to claim that his entire lien should be referred back to the date of the commencement of his work, and the mortgagee's be distributed along the dates of the several advances of money. Whether therefore we regard the dates of the liens of the two parties from either a legal or an equitable standpoint, the mortgagee must be preferred to the mechanic. It seems to us therefore, that there was no error in the rulings of the district court, and the judgment must be affirmed.

All the Justices concurring.