Shanks v. Williams.

---

No. 19,095.

THOMAS SHANKS AND RICHARD SHANKS, *Appellants,* V. JAMES S. WILLIAMS, *Appellee.*

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Mistake as to Boundary Line—Intention—Adverse Possession.* When adjoining landowners treat a hedge between their tracts and near the true boundary line as a practical partition fence, but are mistaken in supposing it to be upon the true line, and there is no agreement or recognition that it is to mark the real boundary and no intention by either to claim beyond the true line, the possession by either of a strip between the hedge and the true line is not adverse as to the other and does not under such circumstances ripen into title.

2. PRACTICE—*Case Tried on One Theory—Theory Will Not be Changed on Appeal.* When the parties to an action have mutually adopted a theory and fully tried their controversy in accordance therewith this court will not on appeal adopt another theory and decide the case in accordance therewith, but will affirm or reverse according as the lack or presence of error shown by the record may require, upon the theory adopted by the parties.

3. TRIAL—*No Affirmative Relief—No Material Prejudice.* The defendant's claim was submitted to the jury, but as he recovered nothing affirmatively no material prejudice on account of such submission, even if erroneous, resulted to the plaintiffs.

4. TRIAL—*Boundary Fence—Incompetent Evidence—Not Prejudicial.* In an action by an adjoining landowner to recover for the destruction of a boundary fence it is not ordinarily competent to show that he owns various other tracts of land in the vicinity.

Appeal from Mitchell district court; RICHARD M. PICKLER, judge. Opinion filed December 12, 1914. Affirmed.

*C. L. Kagey,* and *R. M. Anderson,* both of Beloit, for the appellants.

*J. E. Tice,* and *Ira N. Tice,* both of Beloit, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for damages for the destruction of a certain hedge fence, and the defendant by cross-petition made a like claim for damages concerning the same fence. The contention really involves the title to a hedge running on or near the line between the west half and the east half of the southwest quarter of a certain section of land in Mitchell county. The hedge had been allowed to grow for many years, until the plants had become trees of considerable value, and there was a scramble between the parties and their respective employees to cut and remove such trees, each party claiming to be the owner.

In the '70's a hedge was planted upon or near the north half of the line in question by the person then owning the east half of the quarter, and those owning the west half extended such hedge the remainder of the distance south. No controversy arose until 1911, when the defendant, claiming that the hedge was not on the real line, procured a survey to be made, during a part of which the plaintiff was present, which survey determined the true line to be slightly east of the hedge in question, although when it was set out it had been purposely placed a short distance west of what the owners of the adjoining tracts understood to be the true line.

The plaintiff, who was defeated in this action, appeals, and claims title by adverse possession of the land covered by the hedge, and also by reason of the mutual treatment of the hedge by the adjoining owners as the true line from the time it was planted until shortly before the controversy arose, and it is argued that during all this period the hedge was recognized as the common boundary line and acquiesced in as such; that the north half was claimed to be owned by those owning the east half of the quarter and the south half by plaintiffs' grantors; that such possession and mutual recognition were of such character and duration as to vest title in the plaintiffs. Plaintiffs' counsel very aptly remark that in the trial the old settlers of the locality "passed in endless review on the witness stand," and certain it is that all that could be elicted from a multitude of witnesses having more or less knowledge of the situation for some forty years was presented for consideration.

The defendant claims that the paintiffs acquired title to the land less than fifteen years before the alleged trespass; that no effort was made to settle the true boundary line until a few years before the controversy arose; that when a survey was suggested to plaintiff Thomas Shanks, he made no objection, and although present during its progress he did not appeal therefrom, notwithstanding such survey showed the hedge in question to be on the defendant's land; also that his title covers the hedge and that there was no proof of an oral agreement fixing the boundary elsewhere than on the true line, and that as the hedge was only the practical boundary occupied by the parties in common as a division fence there could be no adverse possession.

Counsel for plaintiffs have with great industry presented an elaborate brief abounding in authorities in support of each point presented. The matter of prime importance, however, is the view taken by the jury in their special findings, thirty-one in number. In these they say expressly that the line on which the hedge

stands was not described in the deed to the plaintiffs; that there was no claim when the hedge was planted that it should be the boundary regardless of the true line; that the various grantors of the plaintiffs and the plaintiffs themselves did not occupy the strip of land in dispute with the intention of acquiring title thereto, and did not intend to occupy any land not described in the deeds constituting plaintiffs' chain of title, and that they did not have the exclusive possession of the hedge in question, but that they did occupy the strip of land in dispute because of a mistake as to where the boundary line was. Also that if the plaintiffs at any time occupied such strip they did not thereby intend to claim any land not their own. The unmistakable effect of these findings is that two adjoining landowners claimed a hedge upon or near what they believed to be the true boundary line and for a generation they and their grantors, without any agreement that it should constitute the true boundary and without claiming any land otherwise than as governed by the true boundary, treated the hedge as a practical partition fence. These findings would indicate that the hedge was owned in common. Whatever additional facts may be shown by the evidence touching the mutual treatment of the north half of the hedge as the defendant's and the south half —the part in controversy—as the plaintiffs', the case was tried on the theory adopted by both parties that the title to the land determined the title to the hedge, and we can not control this choice of theories nor change the issues thus framed and litigated by the parties.

It is earnestly contended that the conclusions of the jury are not supported by the evidence, but while as usual much ground for contrary findings could be gleaned from the record, still a careful reading of the abstract and counter-abstract discloses ample support for those made. *Winn v. Abeles,* 35 Kan. 85, 10 Pac. 443, is authority for the rule that mere occupancy by mistake without intention to claim title may not amount

to a disseizin when a fence is erroneously erected not on the dividing line. *Steinhilber v. Holmes,* 68 Kan. 607, 75 Pac. 1019, declares the converse of the foregoing, that when parties by mutual agreement fix a boundary line and thereafter acquiesce therein they are bound thereby even prior to the statutory period of limitations. In *Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836, the real test is declared to be the intention with which the party takes and holds possession. It was there expressly held that:

"Where a fence is believed to be the true boundary and the claim of ownership is up to the fence as located, if the intent to claim title exists only on the condition that the fence is on the true line the intention is not absolute, but conditional, and the possession is not adverse." (Syl. ¶ 3.)

To the same general effect is *Peterson v. Hollis,* 90 Kan. 655, 136 Pac. 258. The plaintiff, Thomas Shanks, testified that he believed the hedge was the true boundary when he bought the land, and he did not think he was occupying any land that belonged to the heirs of the adjoining owner and did not intend by such occupancy to secure title to any land that belonged to them. "A. No, of course I did not expect to get any land except that running right to the hedge, that was the line fence." While portions of the testimony of plaintiffs and their grantors were to the effect that they regarded the hedge as the boundary, still one of the plaintiffs testified that there was no agreement with the heirs of the adjoining landowner or anybody that the hedge was the boundary, and the other plaintiff testified that he never had any conversations with these heirs about the boundary, nor did he ever notify any of them that he claimed a part of their farm. Also, that he did not intend to occupy any land not described in his deed or any that was not his own; that he believed that the hedge was the true boundary and did not think he was occupying any land that belonged to the adjoining own-

37—93 KAN.

ers, and did not expect to get any land except that running to the hedge. M. S. Chapel, a former owner who planted the hedge, testified among other things that, relative to the question of survey, "The conditions were that I always supposed if there should be a survey made and should change where the hedge already set it would change the line." Question No. 31 and its answer were as follows:

"Q. Was there ever any agreement between the owners . . . that the west side of road No. 229 should be the true line between their farms regardless of where the true line should be? A. No."

No. 14:

"Q. If the heirs of Calvin Dodge (a former owner) occupied the strip of land in dispute did they occupy it because of a mistake as to where the boundary line was? A. Yes."

Similar findings were returned as to Calvin Dodge and M. S. Chapel, and still others to the effect that the heirs of Dodge never occupied the strip of land in dispute with the intention of acquiring title thereto; and in answer to question No. 16 it was expressly found that the plaintiffs, if they occupied such strip, did so because of a mistake as to where the true boundary was. But without pursuing the matter farther it suffices to say that under the authorities cited the findings justify the judgment which was rendered.

Numerous assignments of error and many subdivisions thereof are presented in the brief, but with two exceptions they are practically included in the general propositions already considered.

As to the complaint that the defendant's claim was erroneously submitted to the jury, it need only be said that he recovered nothing affirmatively and hence no harm appears to have resulted to the plaintiffs in this respect.

One of the two plaintiffs was on cross-examination required to answer touching their ownership of other

tracts of land in the vicinity. The relevancy or competency of such ownership is not apparent, but from the record presented no material prejudice can be discovered.

Finally, a careful examination of all the points presented results in the conviction that this is one of a multitude of cases settled by the jury upon consideration of conflicting evidence under such circumstances that their conclusion can not be disturbed.

The judgment is affirmed.