No. 27,582.

THE UNION STATE BANK, *Appellee,* v. WELLS H. CHAPMAN and LIDA M. CHAPMAN, *Appellants.*

(259 Pac. 681.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Future Advances—Validity.* A legal mortgage may be made to secure future advances as well as for an existing liability and if executed in good faith it will be a valid security.

2. SAME—*Foreclosure—Nature of Remedy.* The foreclosure of such a mortgage is of equitable cognizance; and if for trial by the court and upon the pleadings and issues as formed in the instant case a jury trial could not be demanded as a matter of right.

3. SAME—*Foreclosure—Right to Counterclaim.* No error was committed in denying a recovery on a counterclaim for damages by defendants for failure to sell an oil and gas lease deposited with plaintiff.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed October 8, 1927. Affirmed.

*H. S. Hines, S. C. Burnette* and *Oscar Renn,* all of Arkansas City, for the appellants.

*W. L. Cunningham* and *D. Arthur Walker,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the Union State Bank to recover moneys loaned to Wells H. Chapman and Lida M. Chapman, a part of which was secured by mortgages, and for the foreclosure of the mortgages, and to obtain a judgment for unsecured obligations. The plaintiff recovered and defendants appeal.

One of the mortgages involved was for $3,000, executed on June 6, 1921. No question was raised as to the validity of this mortgage or the debt, and in the answer defendants confessed judgment on them, and their admissions so made eliminated any controversy concerning this obligation. They also admitted and confessed judgment for $9,847.97 with interest from October 6, 1925, which he stated was unsecured except a part that was secured by a .chattel mortgage. Among the obligations was one termed "the dollar mortgage," which plaintiff alleged was given in June, 1921, by defendants to secure a credit with plaintiff bank and for any sums thereafter obtained from

Juries, 35 C. J. p. 166 n. 99, 1. Mortgages, 41 C. J. p. 462 n. 30; 27 Cyc. p. 1513 n. 31; 19 R. C. L. 429.

the bank or for which they or either of them should be indebted to the bank. The mortgage recited a consideration of one dollar and certain covenants, agreements and advancements for which the mortgage was given by defendants on described real estate, and it further contained the statement:

"It being the intention of the parties hereto that this mortgage shall secure any advancement made from time to time to parties of the first part or either of them by the party of the second part, however evidenced, whether by note, check, receipt or book account, and to remain in full force and effect between the parties hereto or assigns until all advancements made by virtue hereof are paid in full with interest," etc.

Provisions were also made for foreclosure in case of default of the payments of the advancements or if the taxes or insurance should not be kept up thereon. Money was advanced at several times for various purposes, for which the defendant executed a note on November 24, 1922, for $2,183 payable six months after date and bearing interest at the rate of ten per cent per annum. This debt was alleged to be secured by the dollar mortgage given for advancements, and the principal complaint of the defendants is over that part of the judgment decreeing that the mortgage be foreclosed to satisfy that indebtedness.

The defendants alleged that the mortgage was signed by them in blank, and was done at the instance of plaintiff to protect them as against a fraudulent claim of another bank, and that by executing the mortgage they would be enabled to defeat a fraudulent mortgage held by that other bank, and they alleged that the dollar mortgage was given for no other purpose and was therefore without consideration. The mortgage was set forth at length in the petition of plaintiff, and it was alleged that it was given for advancements in the amount of the note, a copy of which was also set forth. There was no denial of the execution of these instruments so that the execution of the same stood admitted in the pleadings. The admission of execution included delivery and implied a completed contract, as it cannot be said to have been executed unless it has been delivered as a complete instrument. More than that the execution of these papers was expressly admitted a number of times in the answers filed by defendants, and there was proof, too, that the mortgage was completed when signed instead of being a blank instrument. Aside from the pleadings, Mr. Chapman testified that he considered the mortgage to be given as security for money advanced after it was

executed. There was no amendment of the pleadings asked in respect to the execution of the instruments, and the court on the motion for a new trial stated:

"That the defendants, Chapman, had at no time during the trial of the above-entitled case, nor at any time subsequent thereto, asked leave to amend their pleadings so as to deny the allegations of plaintiff's petition as to the amount advanced under a second or so-called dollar mortgage, and do not now ask to so amend their pleadings."

It is well settled that a mortgage may be made to secure future advances as well as for an existing liability of a mortgagor, and if it is executed in good faith, it will be regarded as a valid security. (27 Cyc. 1069.) Defendants concede that a valid mortgage may be made to secure advances, but they say that the amount advanced by the plaintiff was less than the amount of the note which they signed more than a year after the mortgage was executed. This contention is based upon a statement of one of the officers of the bank that the actual cash advanced to defendants was $697.33, but the witness was speaking of cash advanced and not of all payments advanced by the plaintiff for defendants which made up the amount of the note as shown by the testimony. No error was committed in the foreclosure of the mortgage.

There is a contention that the court should have called a jury to try the case, but an application made by defendants was overruled. In view of the state of the pleadings including the absence of denials and of the admissions of defendants as to the mortgage and note, there was no occasion to call a jury. The validity of the mortgage and the right to a foreclosure were the controverted issues, and these were subjects of equitable cognizance, and a jury was therefore not demandable as a matter of right. (*Morgan v. Field,* 35 Kan. 162, 10 Pac. 448; *Houston v. Goemann,* 99 Kan. 438, 162 Pac. 271, and citations; *Brush v. Boyer,* 104 Kan. 168, 178 Pac. 445; *Fisher v. Rakestraw,* 117 Kan. 441, 232 Pac. 605.) However, it is said that defendants had pleaded a counterclaim of damages upon the ground that plaintiff had agreed to sell an oil and gas lease executed by defendants and delivered to plaintiff for that purpose, and that the proceeds of the sale would be credited on the indebtedness of defendants. They alleged that the plaintiff had failed to carry out this agreement. So far as the right to a jury trial is concerned, the defendants could not by pleading this claim for damages change the plaintiff's cause of action and was not entitled to a jury trial of the

case as a matter of right. (*Brush v. Boyer,* and *Fisher v. Rakestraw,* supra.) Besides, the deposit of the lease with the bank was evidenced by a writing dated April 16, 1925. It recited:

"Received this 16th day of April, 1925, oil and gas lease covering (lands described), executed by Wells H. and Lida M. Chapman, said lease to be held by the Union State Bank for sale at the price of $5,442.50, and to be delivered only upon the receipt of said sum. Attached hereto is a copy of oil and gas lease as delivered to the Union State Bank, day and date as above written."

This was signed by the vice president of the bank.

It will be observed that the writing does not state that the bank agreed to sell the lease or to buy and pay for it. It did not state whether the lease was to be sold by plaintiff or defendants. It did state that it was to be held for sale and was not to be delivered unless $5,442.50 was paid for it. The lease so deposited and not recorded, was in the nature of an escrow, and perhaps might be regarded as a pledge for the protection of the plaintiff so that in case it was sold by defendants or anyone else, the proceeds could be applied on the indebtedness of defendants, but the bank did not agree to buy it or even to sell it. It only agreed to hold it for sale. The bank did not claim to own it or agree to become liable for any amount in case a purchaser for it was not found. The fact that it was mislaid at one time and could not be found did not prevent the defendants from making another lease if a purchaser had been found. No liability on this score was shown, and the denial of a recovery for damages was not error.

The judgment is affirmed.