No. 34,448

MAE W. LEWIS, *Appellee*, v. THE INDEPENDENCE HOTELS COMPANY, *Appellant*.

(96 P. 2d 605)

Opin-ion filed December 9, 1939.

*John Bertenshaw* and *Kirke C. Veeder,* both of Independence, for the appellant.

*Chester Stevens,* of Independence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for the specific performance of a contract for the sale of a hotel property in Independence. Upon plaintiff's application, and after a hearing, the court appointed a receiver for the property pending the action. Also, the court overruled defendant's demurrer to plaintiff's amended petition. Defendant has appealed from the order appointing the receiver, and also from the order overruling its demurrer.

The order appointing the receiver was made January 25, 1939. The notice of appeal was filed May 4, 1939. This was more than

two months after the order, and the appeal is too late. (G. S. 1937 Supp. 60-3309.) Appellant cites G. S. 1937 Supp. 60-3314a, which relates to appeals after final judgment. There has been no trial on the merits and no final judgment in this case, hence this provision is not available to appellant.

We turn now to the ruling of the court on the demurrer. The amended petition was in four counts. Briefly stated, the first count alleged that on and prior to August 20, 1930, plaintiff and her sister, Hattie F. Conger, were the owners of two described lots in the city of Independence, together with the building and improvements thereon, known as the Carl-Leon Hotel; that plaintiff owned an undivided two-thirds interest and her sister the remaining one-third interest in that property; that on August 20, 1930, plaintiff and her sister, as parties of the first part, entered into a written contract with G. L. Holvey, as party of the second part, whereby the parties of the first part agreed to sell to the party of the second part, and he agreed to purchase from them, the real property described, for the sum of $40,000. A separate paragraph specifically provided how this sum should be paid—$2,050 cash on the execution of the contract, 139 monthly installments of $350, and the 140th of $235, to be paid between the first and tenth of each month, the first installment to be paid September 1, 1930, and the payment of $3,000 on August 20, 1935, making the total amount payable, including interest on deferred payments, the sum of $53,935. The second party also agreed to pay all taxes and assessments upon the property when the same were due and payable and to keep the property insured in a sum not less than $22,000. The time for the performance of these payments was specifically made the essence of the contract. It further provided that the party of the second part proposed to organize a corporation under the laws of the state of Kansas for the purpose of engaging in the hotel business, and upon the organization of the company to turn over the contract to it under the terms and conditions contained therein. It further provided that upon the full performance by the party of the second part, or its assignee, of the terms of the contract the parties of the first part would make and deliver to the party of the second part, or the hotel company, a good and sufficient warranty deed in fee simple conveying full title to the property to party of the second part, or the hotel company. Further provisions of the contract need not be specially noted. It was further alleged that soon thereafter Holvey did cause to be organized

the Independence Hotels Company, which took over the contract on behalf of the party of the second part, went in possession of the property, and assumed the obligations of the party of the second part thereunder; that the hotel company made the installment payments, except the installment due and payable between the first and tenth days of November, 1938, which payment had not been made; that the plaintiff paid the taxes levied and assessed on, the property for the years 1931 and 1932 and paid the taxes upon one of the lots for the year 1933, but not upon the other. It was alleged that G. L. Holvey, until the defendant assumed the contract, on or shortly after January 28, 1931, and the defendant after it assumed the contract, had made to plaintiff ninety-eight of the payments, commencing with September, 1930, and concluding with September, 1938, at the rate of $233.33 each month, aggregating $22,866.34; that there remained forty-two payments to be made, of which her share aggregated $9,880.32. It was alleged that defendant neglected, refused and omitted to pay the November, 1938, installment, and that the same was in default; that plaintiff had failed to pay the taxes on one of the lots for the years 1933 to 1937, inclusive, and upon the other lot for the years 1934 to 1937, inclusive, which taxes, with interest and penalties, amounted to $7,504.27. It was further alleged that the defendant had failed to keep plaintiff informed as to whether the insurance had been kept in force, which was the contract. It was alleged defendant was insolvent, and other facts were alleged tending to show that a receiver should be appointed. It was further alleged that plaintiff had kept and performed all of the provisions of the contract on her part and was entitled to have it performed by defendant, and she offered to execute, deliver and tender a good and sufficient warranty deed, as the court might direct, fully to carry out the contract on her part.

Briefly, the second and third causes of action grew out of the $3,000 payment, which by the terms of the contract was to be made August 20, 1935. Plaintiff's share of that was $2,000. Defendant paid $1,100 and gave its note for the other $900. Facts respecting that are alleged in the second cause of action, and the suit was for $54 interest on the $900 note from February 1, 1937, to February 1, 1938. The third cause of action was for the interest on the same note for the next year. The fourth cause of action stated more specifically the allegations for the appointment of a receiver.

The general prayer was that plaintiff have judgment against de-

fendant for the specific performance of the contract for the sale of the property, that she have judgment on the several causes of action, that specific items of relief, not necessary now to be noticed, be adjudged, and that plaintiff have such other and further relief as may be just and equitable.

Appellant first contends that appellee cannot maintain this action for the reason that her amended petition, and the amendments thereto, disclose that she has not complied with our statute relating to mortgage registration fee (G. S. 1935, 79-3101 *et seq.*). This was raised by the demurrer and also by a motion to dismiss. There was some controversy as to whether the instrument was one that required the payment of the registration fee. Either conceding that the instrument was one on which such a fee should be paid, or to avoid any further question about it, plaintiff had the register of deeds compute the amount of the fee and paid the sum so computed, $94.75, and was issued a receipt by that officer showing the registration fee paid. By leave of court the amended petition was amended or supplemented by an allegation of such payment. Thereupon the court overruled the motion to dismiss, and also the demurrer to the amended petition, as so amended. Appellant now argues that the payment was not made soon enough and that the amount paid was insufficient to pay the proper registration fee. G. S. 1935, 79-3102 provides for the payment of this fee before the mortgage is recorded; and G. S. 1935, 79-3107 contains a similar provision, "and such mortgage shall not be received in evidence." Hence, the penalties for the mortgage holder are that the instrument cannot be recorded nor received in evidence unless the fee is paid. The record before us does not show when, if at all, the instrument was filed for record. Since the payment was made while the issues were being made up, we think the payment was in time. The amount of the registration fee paid is a matter which concerns the taxing authorities. A similar question arose in *Coryell v. Hardy*, 144 Kan. 194, 58 P. 2d 1151, where a contract quite similar in its broad aspects to the one before us was being considered, and where the registration fee was paid after the action had been filed but before the trial on the merits. The court said:

"The statute defines the term 'mortgage' to include executory contracts for the sale of real estate, and provides such a 'mortgage' shall not be received in evidence unless the tax is paid. Prior to the time the contract was offered, tax was paid. That it was not paid immediately after the contract was made

makes no difference; that the amount of tax that was paid may not have been fully sufficient cannot avail appellant—that is the concern of the tax-collecting authorities." (p. 202.)

Appellant argues the demurrer to the amended petition should have been sustained for the reason that the petition was drawn on confusing theories. Counsel for appellant expresses confusion as to whether plaintiff seeks to forfeit the contract, or to have it specifically performed, or to foreclose it as a mortgage, or to have the property partitioned. We think it clear the petition states a cause of action for the specific performance of the contract, with such incidental or varied relief as a court of equity might properly decree.

The suggestion about plaintiff's seeking a partition of the property apparently grows out of these facts: Plaintiff lives at Minneapolis, Minn. She owned an undivided two-thirds interest in the property at the time and before the contract for its sale was made. Her sister, Hattie F. Conger, lives at Hollywood, Cal., and owned an undivided one-third interest in the property. As we understand the record, monthly payments always were made two-thirds to plaintiff and one-third to her sister. The original petition alleged that about January 31, 1936, defendant purchased from Hattie F. Conger her undivided one-third interest in the property and became the owner thereof. Since that time apparently the parties have treated the contract with plaintiff as one to purchase her two-thirds interest in the property, and the payments made to her and what she seeks to recover in this action is two-thirds of the sum of the respective payments provided for in the contract. Appellant argues that it now has become a tenant in common with plaintiffs, that a fiduciary relation exists between tenants in common, hence that plaintiff could not maintain specific performance or foreclose the contract as a mortgage. The only authority cited in support of this view is 62 C. J. 466, to the effect that one cotenant cannot buy up an outstanding mortgage and foreclose it as against his cotenant. Obviously the citation is not in point. We see no reason a court of equity should not now treat the relation of the parties the same as if defendant had purchased the share or interest of Hattie F. Conger in the property and then had made a contract with plaintiff to purchase her interest for two-thirds of the sum provided for in the contract made.

We find no reason to disturb the rulings and judgment of the trial court, and they are affirmed.