No. 40,758

THE POTWIN STATE BANK, a Corporation, *Appellee*, v. (CHARLES R. WARD, SR., and DELORES L. WARD, husband and wife, and WILLIAM TINKLER, Defendants), J. B. HOUSTON & SON LUMBER COMPANY, INC., *Appellant.*

(327 P. 2d 1091)

476

Opinion filed July 16, 1958.

S. E. *Freeman*, of Wichita, L. J. *Bond* and *Robert M. Bond*, both of El Dorado, were on the briefs for appellant.

J. B. *McKay* and *James B. McKay, Jr.*, both of El Dorado, were on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action brought by the appellee in the lower court to foreclose a mortgage reciting a consideration of "One Dollar ($1.00) and the further covenants, agreements and loans and advances hereinafter specified" with a specific recital that it was "intended as a mortgage to secure the payment of any sum or sums of money which may be loaned or advanced by the mortgagee, its successors or assigns, to the mortgagor at date hereof or from time to time, as the parties hereto may now or hereafter agree, with interest"—commonly called a "Dollar Mortgage."

The underlying question concerns the priority of liens where a mortgage is given to secure future advances and mechanic's lien claimants supply labor and materials for the erection and construction of a dwelling house on the mortgaged premises after the recording of the mortgage but before the making of the advances by the mortgagee.

The action was brought by The Potwin State Bank (hereinafter called the Bank), appellee, against Charles R. Ward, Sr. (hereinafter called Ward), and Delores L. Ward, his wife, J. B. Houston

& Son Lumber Company, Inc. (hereinafter called Houston), and William Tinkler, to foreclose a mortgage given by the Wards to the Bank.

In July, 1955, Ward applied to the Bank through Ralph Hinnen, its cashier (hereinafter called Hinnen), to finance the building of a number of houses on lots Ward had acquired in Towanda, Kansas. Hinnen agreed to finance the building of one house at a time, the arrangement being that Ward would sell each completed house and pay the Bank's mortgage against it before starting another house.

Pursuant to this arrangement, the Bank advanced the money to build the first house, this house was sold, the Bank paid, and the mortgage released.

The Bank advanced the money to build a second house and the Wards gave a "Dollar Mortgage" as security covering Lots 10 and 12. The second house was completed and the proceeds paid to the Bank and the mortgage released. (Except to give the history leading up to this controversy the foregoing two mortgages are not material in this action.)

On January 11, 1956, the same day the mortgage was given to finance the second house, the Wards gave the Bank a "Dollar Mortgage" covering Lots 5, 7, 9, 15, 17 and 19. At the time this mortgage was recorded, Ward's total indebtedness to the Bank, evidenced by various notes, was $6,000, and the Bank paid a mortgage registration fee on $5,000 on the mortgage covering Lots 10 and 12. A mortgage registration fee on the remaining $1,000 was paid on the mortgage covering the six last described lots. This mortgage was recorded on the 12th day of January, 1956, in the office of the register of deeds and in the margin of the mortgage itself in the upper right-hand corner was written $1,000 in Hinnen's handwriting. The material portions of the mortgage in question between the Wards and the Bank read:

"WITNESSETH, That the said mortgagor, in consideration of the sum of One Dollar ($1.00) and the further covenants, agreements and loans and advances hereinafter specified to the said mortgagor duly paid, the receipt of which is hereby acknowledged, has sold and by these presents does grant, bargain, sell and mortgage to the said mortgagee, its successors and assigns, forever, all that tract or parcel of land situate in the County of Butler and State of Kansas, described as follows, to-wit:

Lots numbered 5-7-9-15-17 and 19 all in Block 3 Mooney's 2nd Add'n to the City of Towanda

with all the appurtenances, and all the estate, title and interest of the mortgagor therein.

"And the said mortgagor does hereby covenant and agree that at the delivery hereof the mortgagor is the lawful owner of the premises above granted and seized of a good and indefeasible estate of inheritance therein, free and clear of all encumbrances.

"This grant is intended as a mortgage to secure the payment of any sum or sums of money which may be loaned or advanced by the mortgagee, its successors or assigns, to the mortgagor at date hereof or from time to time, as the parties hereto may now or hereafter agree, with interest on each loan or advance from the time of the loan or advance until paid; it being the intention of the parties hereto that this mortgage shall secure any and all advances made from time to time to the mortgagor by the mortgagee, its successors or assigns, however evidenced, whether by note, check, receipt, book accounts, overdraft, or any liability as endorser or guarantor on any other indebtedness of either of the mortgagors, either direct or indirect, now or hereafter held by the said mortgagee, its successors or assigns, and to remain in full force and effect between the parties hereto, or assigns, until all advances made by virtue hereof, including all other liabilities held as heretofore mentioned, are paid in full with interest; . . ."

On the face of this instrument was a stamp with blanks filled in reading as follows:

"REGISTRATION FEE

Amount of indebtedness $1000.00   Fees $2.50
Filed this day 12 of Jan. 1956   No. 38
s/   NINA JONES
Register of Deeds Butler County Kansas"

On March 29, 1956, Ward executed two notes to the Bank, one for $1,000 in renewal of the $1,000 note given on January 11, 1956, and secured by the mortgage in question, and one for $4,000, advanced to build house number three, which was built on Lot 19. The amounts of these two notes were credited to Ward's account, and as part of the same transaction, he gave the Bank a check for $1,318.12, the amount of the original $1,000 note and a $300 note, plus interest. Until Ward's account was credited with the $5,000 his check was not good for any amount. In fact, his account on March 28, 1956, was overdrawn $16.69.

Hinnen, the only witness called by the Bank to testify, was of the impression that he would need a new mortgage as a vehicle on which to pay the additional registration fee made necessary by the advancements made and to be made to build the third house, and for that reason, had the Wards execute a "Dollar Mortgage" dated March 31, 1956, covering Lot 19 only. This mortgage was signed

after office hours by the Wards in blank (according to Ward's testimony on March 28th). Hinnen does not type and the typewritten portions were written in the next day with Ward's consent. (A discrepancy in the dates between the 29th and 31st is not satisfactorily explained in the record.) This mortgage dated March 31st was never recorded, as a bank examiner advised Hinnen that he could pay the additional registration fee on the original mortgage—the mortgage dated January 11, 1956, covering the six lots. All mortgages between the Bank and the Wards were prepared on the same identical blank mortgage form, a portion of which has heretofore been quoted.

Ward told Houston of his arrangements with the Bank, and that it had agreed to finance the third house. Houston's manager testified that he furnished material for the house *in reliance on Ward's statement that the Bank would advance the money*. Houston's lien covers materials purchased by the Wards and used in the erection and construction of improvements located on Lot 19, on and between February 15 and June 8, 1956, of the value of $3,083.16. This lien was filed with the clerk of the district court of Butler County on July 1, 1956.

William Tinkler, a lien claimant and defendant in the court below, not a party to this appeal, claimed that Ward was indebted to him for labor performed and materials furnished in the erection of said house and improvements on Lot 19 in the sum of $179.89 with interest from August 17, 1956.

As construction of the third house progressed, the Bank advanced money from time to time until on June 7, 1956, it had advanced a total of $9,950, including the renewal note of $1,000, for which Ward had given it promissory notes. At this time the house was not yet completed. Ward had told the Bank the third house would cost $6,850, but it actually cost approximately $7,900, and Ward had arranged to sell it for $8,200.

The Bank declined to advance any more money, and on the 7th day of July, 1956, paid the registration fee on the additional money it had advanced ($8,950). In doing so, Hinnen requested the register of deeds of Butler County in writing that the mortgage covering the six lots dated January 11, 1956, be re-recorded because of an increase in the amount of the loan. At this time Hinnen also wrote in the margin in the upper right-hand corner of the mortgage the figure "$9,000." The register of deeds re-recorded the mortgage

and placed another stamp on the face of this mortgage similar to the stamp heretofore quoted indicating: As the amount of indebtedness $9,000, registration fees $22.50, and filed July 7, 1956.

The Bank then brought this action to foreclose its mortgage of January 11, 1956, covering Lots 5, 7, 9, 15, 17 and 19. Houston and Tinkler were joined with the Wards as defendants.

The amount of indebtedness of the respective parties was not at issue and the trial resulted in a general finding and judgment in favor of the Bank that its mortgage dated January 11, 1956, covering the six lots, including Lot 19, was a first lien to secure the indebtedness of Ward to the Bank in the sum of $10,682.32 ($9,950 plus interest to date of judgment), and that any and all right, interest, equity, estate and lien of the defendants, and each and all of them, in and to said real estate, were in all respects inferior, junior and subordinate to such lien of the plaintiff Bank.

The court ordered "That the aforesaid mechanic's liens of defendants Houston and Tinkler are co-ordinately second liens, junior and inferior only to the aforesaid lien of the plaintiff, on the above described Lot 19."

Houston filed a motion for a new trial which was overruled and Houston, only, has duly perfected his appeal to this court.

The foregoing statement of facts has been garnered from the evidence, viewed in the light of Houston's demurrer to the Bank's evidence (upon which the Bank did not elect to rely) and the general finding of the trial court in favor of the Bank and against the defendants. These facts will serve as a basis for further discussion and permit elaboration upon the evidence as the position of the respective parties may warrant.

The first position taken by the appellant is that the mortgage dated January 11, 1956, covering the six lots securing $1,000 evidenced by Ward's note dated January 11, 1956, was paid and the mortgage should have been released of record by the Bank on March 29, 1956.

It is argued that the Bank, when filing the mortgage of record on January 12, 1956, endorsed thereon the amount of indebtedness secured by said mortgage, "$1,000"; that by its action the Bank in writing on said mortgage represented to Houston and to all others that said mortgage was to secure an indebtedness of $1,000, and was a mortgage for a *definite amount;* and that by its action, in requesting and accepting from the Wards an executed mortgage

to secure future advances on March 31, 1956, covering Lot 19 only, free and clear of all encumbrances, shows conclusively that it considered said mortgage dated January 11, 1956, to be security for a definite and fixed amount. Houston relies on *Weninger v. First National Bank*, 170 Kan. 83, 223 P. 2d 716, Syl. ¶ 1, which reads:

"Under the provisions of G. S. 1935, 67-309, a mortgagee in a real estate mortgage is obliged to release the same of record only when one of the two conditions specified in the statute exists, namely, when the mortgage is paid or when the mortgage covers real estate in which the mortgagor had no interest."

Houston claims that the indebtedness was paid by Ward's check for $1,318.12, dated March 29, but cashed March 31, 1956. On March 29th, Ward executed two notes to the Bank, one for $4,000 and one for $1,000. Hinnen testified positively that the $1,000 note was "taken in renewal of a note that was dated January 11, 1956"— the note Houston claims was paid by Ward's check dated March 29—and that the $4,000 note represented new "money advanced to build the third house." The amount of both notes was deposited to Ward's account on March 31—the date the check was cashed. As a matter of bookkeeping, the check and notes were posted simultaneously. The check was posted first, so that the liability ledger of Ward with the Bank did show that at the instant the check was posted Ward owed the Bank nothing, but when the posting was completed, the ledger showed that Ward owed the Bank the sum of the two notes, or $5,000. It was also undisputed that without the notes, the check Ward gave to the Bank was no good.

Clearly, while the transaction took the form of the Bank crediting Ward's account with the amount of the two notes dated March 29th and Ward giving the Bank a check which included the amount then due under the $1,000 note dated January 11th, there was never a time when Ward was not indebted to the Bank, and the $1,000 note dated March 29th renewed the $1,000 note dated January 11th.

It is well settled that a renewal note does not pay the original. Whether a promissory note was given pursuant to an express agreement to compromise, settle and satisfy a pre-existing debt, or merely given to extend the time for payment is a question of fact for determination from the evidence submitted. Furthermore, in the absence of an express agreement that a renewal note is executed in satisfaction of an older note, or to compromise, settle and satisfy a pre-existing debt, there is a presumption of law that the renewal

note is not a payment of the older obligation but is merely given to extend the time of payment. (*State Bank v. Weiser,* 117 Kan. 389, 232 Pac. 613.)

Upon all the evidence presented by the record the trial court was justified in finding that the $1,000 note dated March 29th renewed the $1,000 note dated January 11th.

Actually, it is immaterial whether the last $1,000 note is treated as a renewal of the first, or as a new obligation. The mortgage, by its express terms, secured any and all advances "made from time to time." There is no evidence to support the claim that the mortgage of January 11, 1956, should have been released by the Bank. To the contrary, Hinnen testified that he took the mortgage of March 31st because of his belief that he had to file additional registration fees on that particular lot, and that after he took the mortgage he had the bank examiners, who advised him not to record the mortgage, but to pay the additional fee on the original mortgage. Ward, called to testify for Houston, said that the latter mortgage was given to the Bank "so there would be no doubt about the bank having sufficient paper on hand to cover the money they were going to loan me."

Neither Hinnen nor Ward testified that anything was said about the Bank releasing the first mortgage. The first mortgage covered five lots which the second mortgage does not. No reason is suggested by the evidence for the Bank giving up part of its security. Ward is not claiming that the Bank agreed to release the first mortgage; the claim is being asserted by Houston, a stranger to the transaction; Houston never heard of the so-called second mortgage, which was never recorded, until after it had sold all of the material for which it claims a lien.

The record does not indicate that Houston is too serious in this contention. With respect to disposition of the property pending final determination of this action, the parties, including Houston, entered into a stipulation in which they agreed that the stipulation "shall not affect plaintiff's right to foreclose its mortgage as to said Lots 5, 7, 9, 15 and 17 and sell the same as provided by law."

In the absence of an express agreement, a new mortgage does not supersede a former mortgage given to secure the payment of the same debt. In *American Trust Co. v. New York Credit Men's Adjust. B.,* 207 F. 2d 685, it was said:

". . . And where an original secured note is superseded by a subse-

quent note between the same parties, and a new mortgage is executed, the original mortgage remains in force, absent an express release or a covenant not to sue. . . . This is true even though the subsequent note is in a greater amount . . . Since here there is no such formal expression of intent, appellee's contention that the original mortgage was superseded cannot be sustained; the original mortgage must therefore stand . . ." (p. 689.)

The proposition is stated in 36 Am. Jur., Mortgages, § 458, p. 916, in the following language:

"It is a general rule that the question whether the taking of a new mortgage in place of a prior one amounts to an extinguishment thereof is one as to the intention of the parties, and that the acceptance by a mortgagee of a new mortgage, and his cancellation of the old one, does not amount to a payment or satisfaction and does not deprive him of his right to have the lien of the discharged mortgage continued as against an intervening lien, in the absence of an intention to give priority to the intervening lien and in the absence of paramount equities or acts or omissions of the intervening lien holder to his prejudice while relying upon the apparent discharge of the senior lien. . . ."

The next position taken by the appellant is that even if the mortgage was not extinguished by the payment of the notes, the mortgage lien of the Bank would not take effect until the money was actually advanced by the Bank to the Wards. On this theory the Bank would have priority as to the original $1,000 secured by the mortgage but not for subsequent advances, since Houston's lien intervened prior to any subsequent advances.

The appellant states that by the weight of authority on a mortgage for future advances, where the amount is not clearly stated and the making of the advance is *optional* with the mortgagee, the lien attaches only for the amount advanced and from the date advanced. Cases from foreign jurisdictions are cited to support this point. In 36 Am. Jur., Mechanics' Liens, § 184, p. 124, it is stated:

"By the weight of authority, a mortgage for future advances becomes an effective lien from the time of its execution, or as to subsequent purchasers and encumbrancers, including holders of mechanics' liens, from the time of its recordation, rather than from the time when each advance is made, where the making of the advances is obligatory upon and not merely optional with the mortgagee, . . ."

The Supreme Court of Oklahoma has adopted the position just stated. (*Home Sav. & Loan Ass'n v. Sullivan*, 140 Okla. 300, 284 Pac. 30; and *Garey v. Rufus Lillard Co.*, 196 Okla. 421, 165 P. 2d 344.) Kansas, however, has not heretofore adopted the corollary to this rule concerning priority of liens—where a mortgage is for

future advances *when the amount is neither fixed nor clearly stated and the making of the advance is optional with the mortgagee.*

In 19 J. B. K., p. 70 (August, 1950), a comment on Priority of Mortgages v. Mechanics Liens, states:

"A mortgage executed and recorded prior to the actual commencement of the work has priority over the material man's liens where the mortgage is for a fixed sum and does not provide for future advances. If future advances are provided for by the terms of the mortgage after the start of the work, the mortgage lien will have priority only to the extent of the amount actually advanced prior to the commencement of the work. . . ."

As authority for the above statement *Martsolf v. Barnwell*, 15 Kan. 612, is cited. Neither does this case support the statement for which it is cited nor does the statement represent the Kansas law. In *Martsolf v. Barnwell*, supra, the mortgage was for a single, fixed amount, and contained no provision for future advances. Justice Brewer, there speaking for the court, specifically said:

". . . Now, *if it be true*, that equity will look behind the face of the mortgage, and date the liens from the times of the several advances of money by the mortgagee, (*and upon this question we express no opinion*,) it will also upon the same principle date the mechanic's liens from the times of furnishing material and doing work. If the one can claim a lien only from the time of paying over his money, surely the other can claim his only from the time of supplying material and doing work. At such times only does either mortgagee or mechanic part with, or mortgagor and lot-owner receive, value. And if this is the test of lien, it must be so for both alike. Now it does not appear that Martsolf supplied any material, or did any work for which he did not receive pay, or for which he claimed a lien, prior to the last advance of money by the mortgagee. . . ." (pp. 618, 619.) (Emphasis added.)

Clearly, appellant can take no comfort from this case.

In *Security Stove & Mfg. Co. v. Sellards*, 133 Kan. 747, 3 P. 2d 481, the *Martsolf* case was followed and approved to the effect that where the mortgage was for a *fixed and single amount and contains no provision for future advances*, and where only a small portion is advanced prior to the commencement of the work, the priority of the lien of the mortgagee over those of the mechanics and materialmen is not on that account limited to the extent of such prior advancement. See, also, *Wichita Federal Savings & Loan Ass'n v. Jones*, 155 Kan. 821, 130 P. 2d 556, involving a mortgage for a fixed amount under which advances were made as construction progressed.

In the instant case, the mortgage to the Bank is what is sometimes referred to as a "Dollar Mortgage." It did not secure the

payment of any specified amount, but recited that it "is intended as a mortgage to secure the payment of any sum or sums of money which may be loaned or advanced by the mortgagee, its successors or assigns, to the mortgagor at the date hereof or *from time to time,* as the parties hereto may now or *hereafter agree* . . .; it being the intention of the parties hereto that *this mortgage shall secure any debt or advances made from time to time* to the mortgagor by the mortgagee." (Emphasis added.)

This court has recognized that mortgages · are valid and enforceable according to their terms. In *Union State Bank v. Chapman,* 124 Kán. 315, 259 Pac. 681, it was held that a valid mortgage may be made to secure future advances as well as for an existing liability of a mortgagor, and, if executed in good faith, it will be regarded as a valid security. In the *Chapman* case the court was dealing with a "Dollar Mortgage," the form of which was substantially the same as that of the Bank's mortgage in the instant case. There money was advanced at several times for various purposes.

*State Bank v. Tinker,* 131 Kan. 525, 292 Pac. 748, also involved a "Dollar Mortgage," in form identical with the mortgage involved in this case. The court said:

"That such a mortgage may be lawfully made *and will be judicially enforced* was settled in *Union State Bank v. Chapman,* 124 Kan. 315, 259 Pac. 681, and the error based on this phase of the judgment cannot be sustained." (p. 527.) (Emphasis added.)

Our decisions are thus in accord with the majority rule stated in 36 Am. Jur., Mortgages, § 64, pp. 720, 721, as follows:

"There is a diversity of opinion on the question of the validity of mortgages for future advances. A majority of cases, on the subject support the rule that a mortgage may be valid although given to secure future advances, and the same rule has been applied to a mortgage given to secure future indorsements. Under this rule, the obligation secured need not actually be in existence at the date of the execution of the mortgage, but may legally be given to secure advances to be made to the mortgagor, or other obligations to be assumed by him, in the future, or to indemnify against future liabilities to be incurred in his behalf. Indeed, it would be a great hardship if a different rule obtained, for mortgages of this character enable parties to provide for continuous dealings, the nature or extent of which may not be known or anticipated at the time, and they avoid the expense and inconvenience of executing a new security on each new transaction. . . ."

For other Kansas decisions relating to mortgages for future advances see *Kansas City Life Ins. Co. v. Banaka,* 150 Kan. 334, 92

P. 2d 63; *Marshall v. Bailey,* 183 Kan. 475, 327 P. 2d 1034; and authorities therein cited.

The general proposition of law as to priority of liens, which we approve as controlling in the instant case, is well stated in *Landers-Morrison-Christenson Co. v. Ambassador H. Co.,* 171 Minn. 445, 214 N. W. 503, 53 A. L. R. 573, as follows:

". . . It is well settled that a mortgage may be given to secure future advances; and that such advances, at least if made pursuant to an agreement to make them, have priority over mechanics' liens which attached after the recording of the mortgage but before the making of the advances. . . ." (p. 449.)

Houston alleged in its answer filed in the trial court:

"*That the plaintiff bank informed the defendants Ward that said bank would advance sums sufficient to build the improvements on said Lot 19* and that said bank at all times knew that said Wards intended to construct said improvements and that before the improvements were completed said bank refused to keep and carry out its agreement to advance the money for said improvements and that said improvements have not been completed at this time. *That this defendant was informed by the Wards that the plaintiff bank had agreed to advance a sum sufficient to pay for labor and materials used in making improvements on Lot 19 and this defendant relied upon the agreement made between the plaintiff bank and the defendants Ward* and furnished materials used in the construction of said improvements and that they would not have furnished said materials except for their *reliance* upon the arrangement between the plaintiff bank and the defendants Ward and said bank is now estopped to claim a mortgage on said real estate superior and prior to the mechanic's lien of this answering defendant, which was filed as hereinafter alleged." (Emphasis added.)

Counsel for the appellant said in his opening statement that Houston's evidence would show that the Bank told Ward it would finance the building of the third house, and that the Bank informed Houston of this arrangement.

Evidence was introduced in support of this theory. Unfortunately for Houston, the evidence proved not only that the Bank had agreed to advance the money to build the third house, but actually advanced more than the house cost. There was no evidence to the contrary. If there was any question on this point the general finding of the trial court in favor of the Bank fully resolved it. There was no proof, however, that the Bank informed Houston of this arrangement. In fact, Mr. Huber, manager of Houston, talked to Hinnen on July 5 or 6, 1956, for the first time concerning this project and asked Hinnen if the Bank was going to pay

the lumber bill. Hinnen, after consulting with his directors, informed Huber that the directors had decided not to pay Houston the lumber bill. (See, *Norris v. Nitsch,* 183 Kan. 86, 325 P. 2d 326.)

The appellant now seeks to shift its position in this court by claiming that the Bank's mortgage is inferior to its mechanic's lien because it was *optional* with the Bank whether it advanced the money. Such inconsistency is not permitted. When the parties to an action have mutually adopted a theory and fully tried their controversy in accordance therewith, this court will not on appeal adopt another theory and decide the case in accordance therewith, but will affirm or reverse as may be required in accordance with the lack or presence of error shown by the record upon the theory adopted by the parties. (*Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132; and *Shanks v. Williams,* 93 Kan. 573, 144 Pac. 1007.)

Having fully performed its agreement by advancing the full amount of the cost of the house—and $1,000 more—the Bank cannot be blamed for Ward's failure to pay Houston's lumber bill. There was no contention that the Bank ever assumed the responsibility of seeing that Ward properly applied the money advanced to him. In this respect, the case is ruled by *Wichita Federal Savings & Loan Ass'n v. Jones,* supra, in which a note and mortgage had been given for $6,800 to finance the erection of certain improvements but the mortgagee subsequently refused to advance the full amount of the loan. It was there said:

"We are of the opinion that the materialmen, in seeking information as to the source from which they were to be paid, and in learning that a mortgage had been made for the purpose of financing construction, had a right to rely thereon, at least to the extent that the amount of the loan would be advanced, *whether they received it or not.* The Lumber Company is in a stronger position, for it made specific inquiry and was assured the proceeds would be so used. *Of course, if the loan had been fully paid, but the materialmen had not, they would not have been entitled, for the appellant would have fully performed.* . . ." (pp. 825, 826.) (Emphasis added.)

There remains one other question to be answered. Is the Bank estopped to claim that its mortgage secured a larger amount than that on which the original registration fee was paid?

Houston contends that on January 12, 1956, the date the mortgage in question was filed of record, it secured a debt of $1,000, as shown by the figures written thereon by Hinnen. It is argued that no such notation was necessary to be shown thereon for the pur-

pose of paying the registration tax due. (G. S. 1949, 79-3102.) It is also argued that this notation was made on the mortgage by the Bank for the evident purpose of showing that the mortgage secured an indebtedness of $1,000, and that appellant and all others had constructive notice of this representation made by the Bank. Appellant cites 59 C. J. S., Mortgages, § 283, p. 353, where it is stated:

"A mortgagee of land may be estopped to assert the priority of his lien as against subsequent purchasers or encumbrancers by any conduct or omission on his part which operates as a forfeiture of his rights or which would render it unconscionable to enforce his security to their prejudice. . . ."

*Golden Belt Lbr. Co. v. Klinzman,* 138 Kan. 877, 28 P. 2d 736, is cited as supporting the above proposition, and we would add *Norris v. Nitsch,* supra. These Kansas authorities, however, are not applicable to the situation here presented. The law of estoppel operates only on the parties to the transaction out of which it arises and their privies. (19 Am. Jur., Estoppel, § 152, p. 809; see, also, *Pelischek v. Voshell,* 181 Kan. 712, 313 P. 2d 1105.) For a discussion and application of the doctrine of equitable estoppel or estoppel *in pais* to priority of liens see *Wichita Federal Savings & Loan Ass'n v. Jones,* supra.

Appellant pleaded in its answer that when the mortgage of January 11 was recorded the registration tax was paid on the basis of a $1,000 indebtedness; that defendant relied upon the recorded mortgage; that the plaintiff is now estopped to claim said mortgage was valid for any sum over $1,000; and that the Bank was not entitled to a mortgage lien prior and superior to the mechanic's lien of Houston for any sum in excess of $1,000, if for any amount. There was no proof to support these allegations. There was no evidence that Houston ever examined either the mortgage or the record prior to July 5th or 6th which was nearly a month after it had furnished material. Houston therefore could not have relied on the asserted belief that the mortgage secured only $1,000 by reason of the registration fee paid. As heretofore stated, Houston pleaded and introduced evidence to show that it relied upon the Bank's agreement to advance sufficient funds to build the third house. Did Houston think that this loan from the Bank to the Wards would be unsecured? (See, *Martsolf v. Barnwell,* supra.)

Even had Houston examined the record, the claimed estoppel would not apply. It could not rely on the amount of the registra-

tion fee paid and ignore the plain provisions of the mortgage. Houston was bound to know that the mortgagee could always pay an additional registration fee, as was actually done in this case. When the mortgage was recorded on January 12, a registration fee was paid on $1,000, the amount of the indebtedness at that time. The registration fee paid when the mortgage was recorded had no bearing on the question of future advances. The registration fee paid would not impart notice of the extent of the mortgage even on appellant's theory of the law as to optional advances under a mortgage to secure future advances. The notation of $1,000 in the margin in the corner of the face of the mortgage was no part of the mortgage itself nor did it indicate that the mortgage was for a fixed amount. Neither was the notation of the payment of registration fee on $1,000 a part of the mortgage. It was a rubber stamp indorsement made by the register of deeds for tax purposes. On July 7, 1956, before this suit was filed, the Bank paid the fee on the additional advancements it had made.

According to the generally prevailing doctrine advances made under a recorded mortgage given to secure future optional advances will not be denied priority in lien merely because the intervening encumbrancer could not have determined from the mortgage, without extraneous inquiry, the true amount of the indebtedness or advances secured thereby. (138 A. L. R. 582, and numerous authorities from various jurisdictions cited therein.)

Also, according to the generally prevailing doctrine, the recording or docketing of an encumbrance does not constitute such notice as will subordinate the lien of optional advances thereafter made under an antecedent mortgage of which the intervening encumbrancer had record or other sufficient notice. (138 A. L. R. 585, and numerous authorities from various jurisdictions cited therein.)

Houston's claim that it had constructive notice of the representation made by the Bank is unsound. It is based upon the proposition that the registration tax imparts notice. The payment of the registration fee is a revenue measure. It is not a part of the recording acts, and has nothing to do with constructive notice.

In *Lewis v. Independence Hotels Co.*, 150 Kan. 840, 96 P. 2d 605, the following was stated:

". . . Hence, the penalties for the mortgage holder are that the instrument cannot be recorded nor received in evidence unless the fee is paid. The record before us does not show when, if at all, the instrument was filed for

record. Since the payment was made while the issues were being made up, we think the payment was in time. The amount of the registration fee paid is a matter which concerns the taxing authorities. A similar question arose in *Coryell v. Hardy,* 144 Kan. 194, 58 P. 2d 1151, where a contract quite similar in its broad aspects to the one before us was being considered, and where the registration fee was paid after the action had been filed but before the trial on the merits. The court said:

" 'The statute defines the term "mortgage" to include the executory contracts for the sale of real estate, and provides such a "mortgage" shall not be received in evidence unless the tax is paid. Prior to the time the contract was offered, tax was paid. That it was not paid immediately after the contract was made makes no difference; that the amount of tax that was paid may not have been fully sufficient cannot avail appellant—that is the concern of the tax-collecting authorities.' (p. 202.)" (pp. 843, 844.)

There is no merit in Houston's contention that the Bank is estopped to claim a prior mortgage lien for more than $1,000 because it paid a registration fee on this amount when the mortgage was recorded and noted the figure of $1,000 in the margin of the mortgage.

In conclusion we hold in accordance with our prior decisions that a mortgage given to secure future advances is valid and will be judicially enforced, and that advances made from time to time under such mortgage, at least if made pursuant to an agreement to make them—which has been established by the uncontradicted evidence in this case—have priority over mechanics' liens which attach after the recording of the mortgage but before the making of the advances.

The judgment of the trial court is affirmed.